Selden F. Crockett and another *vs.* John H. Phinney and others.

February 4, 1885.

**Trover by Vendee against Attaching Creditors of Vendor—Part Payment by Vendee—Right of Creditor to Rescind Sale—Equitable Rule—Pleading.**—This is an action in the nature of trespass or trover at common law for taking and converting personal property. The defendants justify as creditors of the vendor who sold the property to plaintiffs, alleging in the answer that such sale was, as to them as such creditors, wholly fraudulent and void, because made with intent to defraud the vendor's creditors, to the knowledge of plaintiffs, at the time of their purchase. *Held*, that upon its appearing that plaintiffs bought the property in good faith, without any knowledge of the fraudulent intent of the vendor, and that they have paid the purchase-money in part before notice of the vendor's fraudulent intent, defendants cannot, in this action, at least, without setting up their equities in their answer, avail themselves of the equitable rule by which, when the whole purchase price of property, conveyed by a vendor, with intent to defraud his creditors, to an honest vendee, has not been paid, the sale may be treated as void, and the vendee placed *in statu quo* by restoring what he has paid and otherwise reinstating him. *Query*, whether this equitable doctrine is applicable to fraudulent transfers of personal property?

The plaintiffs brought this action in the district court for Becker county, to recover the value of certain lumber, of which they allege themselves to be the owners, and which the defendant Phinney, as sheriff of Becker county, had, under the direction of the other defendants, taken from the possession of plaintiffs under a writ of attachment against J. D. Campbell & Co. The answer denies plaintiffs' ownership and possession, admits the taking by defendant Phinney, and alleges that about the date of the attachment, J. D. Campbell & Co., being hopelessly insolvent, made a pretended sale of the property to plaintiffs for no consideration and without any change of possession; that such sale was made for the purpose of defrauding the creditors of J. D. Campbell & Co., which fact was known to plaintiffs, and that the sale was fraudulent and void as against the creditors of J. D. Campbell & Co.

The action was tried before *Stearns*, J., and a jury, and the plaintiffs had a verdict for $3,477. The defendants appeal from an order refusing a new trial.

*Jackson & Pond*, for appellants.

The answer sets up the equitable defence of fraud as against plaintiffs' legal title, and, under our practice, the court, which exercises both legal and equitable jurisdiction, should award the proper relief on the trial on the facts proved. *Canty* v. *Latterner*, 31 Minn. 239. There is no question about the legal title of a purchaser after delivery and acceptance of the thing sold. Therefore in every action of this nature, where the defence seeks to impugn the legal title on the ground of fraud, the principle of decision must be essentially equitable. *Kelly* v. *Lane*, 42 Barb. 594; *Greenleaf* v. *Mumford*, 50 Barb. 543.

It is not, of course, (*Lawrence* v. *Bank of the Republic*, 35 N. Y. 320,) that the defence serves the office of a creditor's bill, but this defence invokes the equitable jurisdiction of the court to declare the apparent transfer of title void as against the attaching creditors on the ground of fraud, and therefore to deny relief to the purchaser as against the lien and title of the attaching creditor. To entitle the purchaser to any relief against the creditor's attachment of goods sold in fraud of creditors, he must be a purchaser in good faith and for value, and the entire consideration must have been paid before notice of the creditor's claim. This is the settled rule in both England and America. 2 Pomeroy, Eq. Jur. §§ 745–7, 750–1; Story's Eq. Jur. § 1502; *Minor* v. *Willoughby*, 3 Minn. 154, (225;) *Hicks* v. *Stone*, 13 Minn. 398, (434;) *Marsh* v. *Armstrong*, 20 Minn. 66, (81;) *Warner* v. *Whittaker*, 6 Mich. 133; *Kohl* v. *Lynn*, 34 Mich. 360; *Jewett* v. *Palmer*, 7 John. Ch. 65; *Hardin* v. *Harrington*, 11 Bush. 367; *Pickett* v. *Barron*, 29 Barb. 505; *Dresser* v. *Missouri, etc., Co.*, 93 U. S. 92. The same rule applies even in the case of a second transfer or sale of property. Bump, Fraud. Con. 483; 2 Lead. Cas. in Eq. 101, 116; *Dugan* v. *Vattier*, 3 Blackf. 245; *Parkinson* v. *Hanna*, 7 Blackf. 400; *Lewis* v. *Phillips*, 17 Ind. 108; *Rhodes* v. *Green*, 36 Ind. 7.

*Wilson, Ball & Wallin*, for respondents.

BERRY, J. This is an action in the nature of trespass or trover,

for taking and converting certain lumber, of which plaintiffs claim to be owners by virtue of a sale and delivery thereof to them by its former owner, the firm of J. D. Campbell & Co. The defendants except Phinney, who, as sheriff, acted for his co-defendants, are creditors of J. D. Campbell & Co., and, as such, attached the lumber, upon the basis that, as to them, the sale to plaintiffs was fraudulent. There was competent evidence in the case sufficient to warrant the jury in finding that there was no fraud on the part of the plaintiffs in making the purchase, and that they paid $1,000 of the purchase price of the lumber in good faith, and before notice of any fraudulent intent in making the sale on the part of the firm of Campbell & Co. towards its creditors. For the remainder of the purchase price plaintiffs executed their negotiable promissory note to Campbell & Co., payable in six months, and the evidence tends to show that this note was, by agreement between plaintiffs and Campbell & Co., left in the hands of a third person, (Ball,) by whom the money amount of any shortage in the estimated quantity of the lumber, when ascertained, was to be indorsed on the note, which was then to be handed over to Campbell & Co. The evidence further tended to show that at the time of the attachments, and of notice to plaintiffs of the alleged fraudulent intent of Campbell & Co. in making the sale, the note was still in Ball's hands, under the agreement mentioned, and that subsequently the indorsement of shortage was made thereon, and the note delivered to Campbell & Co., by whom it was put into Ball's hands as security for some indebtedness of Campbell & Co. to him, and to a firm of which he was a member, and in this way Ball held the note at the time of the trial of this action.

In this state of facts the defendants contend that the plaintiffs' recovery should at least be limited to the amount which they had paid upon their purchase of the lumber, at the time when they had notice of the fraudulent intent of Campbell & Co. in making the sale.

In certain circumstances, equity affords relief analogous to that which defendants thus seek in this instance; as, for example, in contests as to title to real estate between a subsequent purchaser and persons having prior equitable rights, such as a prior purchaser whose deed or contract is unrecorded, of whose right the subsequent pur-

chaser had no notice at the time of his purchase; also, in like con-
tests between an honest purchaser and creditors of his vendor, who
claim that the sale was fraudulent as to them, and who seek to avail
themselves of their equitable lien, as creditors, upon their debtor's
property. In instances like these, where the whole purchase-money
has not been paid, in fact, or by the giving by the purchaser of an ir-
revocable obligation for its payment, equity will sometimes, as re-
spects the prior purchaser or creditor, as the case may be, treat the
sale as fraudulent and void by setting it aside, or otherwise, but at
the same time will place the honest purchaser *in statu quo*, by restor-
ing to him whatever he has paid upon his purchase, and otherwise
reinstating him in his position before his purchase. *Clements* v.
*Moore,* 6 Wall. 299; *Lewis* v. *Phillips,* 17 Ind. 108; *Hardin* v. *Har-
rington,* 11 Bush, 367; *Tompkins* v. *Sprout,* 55 Cal. 31; 2 Pom. Eq.
Jur. §§ 745–751; Wait, Fraud. Conv. §§ 192, 193.

But, so far as we discover, this relief is afforded in equitable pro-
ceedings only, and only in regard to real estate. But we think the
trial court properly held that in *this* action, whatever might be done
in an equitable proceeding, the defendants could not avail themselves
of the equitable doctrine spoken of; for this is an action purely in
the nature of the common-law action of trespass or trover. The issues
are such, and such only, as pertain to actions of those kinds. The vi-
tal issue—the precise matter in dispute upon the allegations of the
pleadings—is whether or not the sale by Campbell & Co. to the plain-
tiffs was wholly fraudulent and void as respected the defendants, as
creditors of Campbell & Co., from the fact that it was made with the in-
tent and purpose of defrauding such creditors, to the plaintiffs' knowl-
edge. What, if any, equitable relief the defendants might be enti-
tled to in case the sale was not *thus* fraudulent and void was alto-
gether outside of the issues.

If the plaintiffs had purchased the property in good faith, and with-
out any knowledge or participation in any fraudulent intent of the
vendor, and had paid for it in whole or in part, they had become *legal*
owners of it even as against the vendor's creditors; *and in this action*
their ownership would entitle them to recover the value of the lumber
seized by defendants. It may be possible that by setting up their

*equities* in this action, or some other, and bringing in Ball and Campbell & Co., so as to protect plaintiffs against their outstanding negotiable note, (*Nicols* v. *Crittenden,* 55 Ga. 497,) and restore them to their *status in quo,* the defendants might obtain some such relief as they seek, although the lumber was personal property. But if any such equities could be asserted in such an action as this, they must be set up in the answer. Gen. St. 1878, *c.* 66, § 96. But, as this action stood at the trial, it was a simple action at law, and its issues purely legal, as before stated. Wait, Fraud. Conv. § 194.

These are the only matters which we deem it necessary to discuss in this opinion, and the result is that the order denying a new trial is affirmed.