Jandl, Respondent, vs. Guziekiewicz, imp., Appellant.

*February 7—March 6, 1928.*

*Deeds: Delivery: Evidence: Conveyance in fraud of creditors: Validity as between parties: Estoppel: What constitutes: Minor permitting mother to mortgage his property.*

1. In an action to foreclose a mortgage given by a mother on property previously conveyed to her minor son, the evidence relative to the delivery of the deed to the son is *held* to require a finding that there was such delivery. p. 261.
2. As between the mother and the son, such deed was effectual to vest in the son all the title which the mother had in and to the premises, even though it was executed for the purpose of defrauding creditors. p. 262.
3. In order to constitute an equitable estoppel the conduct which it is claimed misled the opposite party must have been such as to induce him in relying on it to change his position to his damage. p. 262.
4. One loaning money to a mother, the repayment of which is secured by a mortgage on property which she had theretofore deeded to her infant son, the lender having knowledge of such prior conveyance, is not entitled to foreclosure on the theory that the son was estopped from claiming title to the property

by reason of an admission by him that the property was his
mother's, since the mortgagee had no right to rely on such
statement, in view of his own knowledge as to the ownership
of the property.  p. 263.

ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Racine
county: E. B. BELDEN, Circuit Judge. *Reversed.*

Action by *Charles O. Jandl* against Stella Guziekiewicz
and others, defendants, and *Joseph Guziekiewicz,* defend-
ant and appellant.  From a judgment in favor of the plaint-
iff, *Joseph Guziekiewicz* appeals.

On November 17, 1921, at a time when the defendant
Stella Guziekiewicz was in financial difficulties, she deeded
to her son, *Joseph Guziekiewicz,* then an infant, certain
property in the city of Racine.  This deed was delivered to
an uncle of the son, who placed it on record in the office of
the register of deeds.  There is evidence in the record to
the effect that the uncle had in his possession money belong-
ing to the son which he paid to the mother for a conveyance
of the real estate.  The court found, however, that the
deed was without consideration and was executed for the
purpose of defrauding the creditors of Stella Guziekiewicz.

In May, 1922, Mrs. Guziekiewicz being pressed by the
First National Bank of Racine for the payment of her in-
debtedness to that bank, made application to the plaintiff,
through his father and agent, W. J. Jandl, for a loan of
$700, and offered as security a mortgage on the premises
theretofore conveyed to her son.  It appears that W. J. Jandl
had made a prior loan to Mrs. Guziekiewicz and knew about
her financial affairs.  He told her that he could not make
a loan upon such security, because she had conveyed the
real estate to her son.  She told him, in effect, that she had
so conveyed it for the purpose of defrauding her creditors.
Either he or Mrs. Guziekiewicz consulted a lawyer as to
whether it would be safe to take a mortgage on the property

executed by Mrs. Guziekiewicz, who refused to give them any advice in the premises. Mr. Jandl and Mrs. Guziekiewicz then went together to consult with the county judge, apparently for the purpose of seeing whether the county judge would make an order permitting the minor son to mortgage the property. But they got no satisfaction from the county judge. Notwithstanding this, Mr. Jandl loaned to Mrs. Guziekiewicz the sum of $700, the money of his son, *Charles O. Jandl,* the plaintiff, and took as security therefor a mortgage executed by Mrs. Guziekiewicz on the property which she had conveyed to her son, the mortgage being executed to the plaintiff, *Charles O. Jandl.* The son signed neither the note nor the mortgage. Default having been made in the payment of the note and mortgage, this action was commenced to foreclose the mortgage. The defendant *Joseph Guziekiewicz* answered, setting up title in himself to the premises, that Stella Guziekiewicz had no title to the premises at the time the mortgage was executed, and, in a counterclaim, prayed for affirmative relief canceling and satisfying said mortgage of record.

The trial court held that the deed from the mother to the son was executed for the purpose of defrauding creditors, that it was void, that the appellant had no interest therein, rendered the usual judgment of foreclosure, and dismissed the appellant's counterclaim.

For the appellant there were briefs by *Baumblatt & Weisman* of Racine, and oral argument by *Leonard P. Baumblatt* and *Jacob M. Weisman.*

For the respondent there was a brief by *Simmons, Walker & Wratten* of Racine, and oral argument by *Charles F. Wratten.*

OWEN, J. The trial court held that as the money was borrowed by Mrs. Guziekiewicz for the purpose of paying her indebtedness to the First National Bank, and as it was

used for that purpose, the plaintiff in this action was subrogated to the rights which the bank had against Mrs. Guziekiewicz. The respondent here does not seek to sustain the judgment upon any such theory, and in such respect he acts advisedly. The plaintiff is not seeking to be subrogated to any rights which the bank might have had against Mrs. Guziekiewicz. He is seeking to foreclose a mortgage executed by Mrs. Guziekiewicz to himself, and the question of subrogation is not in the case. Respondent seeks to sustain the judgment in this court because Mrs. Guziekiewicz conveyed no title to her son, it being argued that there was no delivery of the deed. Whether there was a delivery of the deed was not an issue at the trial, and the court made no finding with respect thereto, except perhaps inferentially. It rather plainly appears that the findings of the court went on the assumption that there was a delivery of the deed. However that may be, the only evidence in the case bearing upon the subject affirms the delivery of the deed. The appellant testified as follows:

"*Q.* Who did you buy it (the property) from? *A.* The property was bought from my mother.

"*Q.* And the deed was given to you? *A.* The deed was given to me.

"*Q.* What did you do with the deed after you got it? Did you record it? *A.* The deed was recorded before I got it.

"*Q.* What is that? *A.* The deed was recorded before I got it. The deed was recorded by my uncle, who had bought the property for me."

In view of this condition of the record, we must hold that there was a delivery of the deed.

The trial court seemed to be of the opinion that, because the deed was given for the purpose of defrauding creditors, it conveyed no title to the son. It is settled by the decisions of this court that, even though such conveyance be void as to creditors, it is valid and binding between the immediate

parties. *Clemens v. Clemens,* 28 Wis. 637; *Behnke v. Kroening,* 174 Wis. 224, 182 N. W. 837. As between the mother and the son the deed was effectual to vest in the son all of the title which the mother had in and to the premises.

It is further contended on the part of the respondent that a delivery of the deed cannot be presumed, because, by the terms of the deed, the son agreed and assumed to pay a certain mortgage, and that, as this imposed an obligation upon the son, his acceptance of the deed cannot be presumed to be beneficial to the son. We do not find it necessary to consider this question, because of our conclusion that the delivery of the deed was expressly established. The son had attained his majority some time before the trial of the case and had not repudiated the transaction.

To sustain the judgment it is further contended that the appellant is estopped from claiming title to the property. This claim is based upon the following evidence. W. J. Jandl testified:

"*Q.* Did you have any talk with *Joe? A.* Once, when I was in the store, you know; the back room was open, and I talked to *Joe.*

"*Q.* Was that before you made the loan? *A.* Yes, sir.

"*Q.* What talk did you have with *Joe? A.* I asked him if he knows what his mother was doing, going to mortgage that property.

"*Q.* What did he say? *A.* He says: 'I don't care; it is her property.'"

He further testified that he relied upon this statement in making the loan, but that he did not ask the appellant to sign any mortgage. He further testified that he had been in the real-estate business for twenty years; that he had had a great many similar transactions and had made a great many loans. In order to constitute an equitable estoppel the conduct must have been such as to induce another in rely-

ing upon it to change his position to his damage.  *Charles O.
Jandl* knew all about the state of this title.  He knew that
the mother had conveyed it to the son.  He knew that she
had conveyed it for the purpose of putting it beyond the
reach of her creditors.  He knew that, as between the mother
and the son, all the title which the mother had was vested
in her son.  He knew that the mother could not mortgage
the property.  He knew that the interest of the son could
not be mortgaged except pursuant to an order of the county
court.  Because he knew this, he consulted the county judge,
according to his own testimony.  To say that a man of his
knowledge and experience was induced to make this loan by
reason of the conversation above detailed, taxes credulity.
Even though the son said "it is her property," *Jandl* had no
right to rely thereon, because he knew it was not her prop-
erty.  He knew that *Joseph Guziekiewicz* could not execute
the mortgage on the property, or convey the property, ex-
cept pursuant to an order of the county court, and he had
no right to assume that the expression attributed to *Joseph
Guziekiewicz* vested him with greater security than a for-
mal mortgage executed by *Joseph*.  We discover no theory
upon which this judgment can be sustained.

*By the Court.*—Judgment reversed, and cause remanded
with instructions to dismiss the action as to the appellant
and to grant the relief prayed for in his counterclaim.

ESCHWEILER, J. (*dissenting*).  The defendant and ap-
pellant, *Joseph Guziekiewicz,* not only denied that plaintiff
had any right to foreclose against the property, but asked,
by his own pleading, affirmative relief in equity.  Such
relief, I think, should have been denied him and he be left
where he had placed himself.

The trial court found, and I think there is ample support
for such conclusion, that the alleged payments by the uncle
out of an estate alleged to belong to the nephew, of which

estate no records were kept and whose very existence is questionable, were not in fact made, and that *Joseph* paid nothing for this property and took an apparent title to assist in a fraud. Such fraud should not be recognized and confirmed by equity clearing this property of a mortgage the giving of which was by his expressed consent.

I think that so much of the judgment below as denied appellant any affirmative relief should be affirmed, and if he be permitted to hold the property it should not be freed from the mortgage. Some day he may want to sell, and that situation might persuade him to do equity by honestly purchasing a release.