HARVEY, Administrator, Respondent, vs. HARVEY and others, Appellants.

*May 1—December 9, 1930.*

For the appellants · there were briefs by *Bloodgood, Kemper & Passmore* and *Bloodgood, Stebbins & Bloodgood*, attorneys, and *Jackson B. Kemper* and *Albert K. Stebbins* ·of counsel, all of Milwaukee, and oral argument by *Mr. Kemper* and *Mr. Stebbins*.

*Walter H. Bender* of Milwaukee, for the respondent.

The following opinion was filed June 23, 1930:

ROSENBERRY, C. J. The record in this case is very voluminous. The printed case contains over 600 pages and there are approximately 175 pages in briefs of counsel. We make this statement not as forming a basis for any criticism

in the preparation and submission of this case to this court, but to indicate that the record is not only an extended one but the facts as disclosed by it are complicated and intricate. Upon the argument it was advisedly conceded that there was sufficient evidence in the record to sustain the finding of the trial court. It is equally apparent that the findings sustain the judgment.

The principal claim of the defendants upon this appeal is that it appears from the uncontradicted testimony that the deceased Frances A. Harvey obtained the stock in question as a part of a scheme to hinder, delay, and defraud creditors of A. J. Harvey; further, that it appears without contradiction that none of the stock was in Mrs. Harvey's possession at the time of her decease but was in the possession, under color of title at least, of the defendants; that such being the case, the plaintiff cannot recover back the stock as the representative of Mrs. Harvey. The difficulty with this position is that the findings of the trial court are to the contrary. The trial court finds that the certificates delivered by Albert J. Harvey to his wife, Clara V. Harvey, and his mother, the deceased Frances A. Harvey, were pursuant to and in fulfilment of a trust arrangement theretofore entered into by Albert J. Harvey with his wife and mother. If they were delivered pursuant to a prior trust arrangement, they could not have been delivered as part of a fraudulent scheme to defeat the claims of the creditors of Albert J. Harvey. While it is true that a conveyance made by a debtor as part of a scheme to delay or defraud his creditors is void as to creditors, it is valid at least in the sense that it is operative between the parties and as to all persons other than creditors. *Jandl v. Guziekiewicz,* 195 Wis. 258, 218 N. W. 593; *Fargo v. Ladd,* 6 Wis. 106.

While it is held in *Fargo v. Ladd* that where the fraudulent grantee reconveys the property to the grantor or disposes of it in accordance with the directions of the grantor

he cannot afterward set up a valid claim to the property or the proceeds thereof in which he asserts as the basis of his title the original fraudulent conveyance, it is quite evident from the authority cited to sustain the proposition laid down in that case that the reconveyance must be pursuant to an understanding which is a part of or connected with the original fraudulent scheme. In this case there was no such arrangement or understanding. Frances A. Harvey by the transfer acquired full legal title to the property even if the transfer was fraudulent as to creditors. Both Albert J. Harvey and Frances A. Harvey denied that there was any fraudulent scheme or that the transfer was made in an effort to defeat or defraud the creditors of Albert J. Harvey. It appears that Albert J. Harvey requested his mother to loan him the certificates so that they might be used as collateral security. This was not a reconveyance made in fulfilment of an understanding had at the time of the transfer, but is an independent transaction and must stand upon its own basis disconnected from any fraudulent transfer if there was fraud in the original transaction. So that upon any possible theory of the case this claim of the appealing defendants must fail.

We have given the record that thorough, full consideration which the importance of the case and the amount of material involved requires and demands in response to the claim of the appealing defendants that the result reached is so unjust, inequitable, and unfair as to require a reversal of the judgment in the exercise of the power of discretionary reversal conferred upon this court by sec. 251.09, Stats. In this view we are unable to concur although we have given to the arguments of counsel careful and considerate attention.

On the part of the defendants it is most vigorously contended that the court should reverse the judgment on account of the alleged misconduct of Joseph A. Barly, Esq.,

a member of the Milwaukee bar, the attorney for the plaintiff in this action, who was the attorney·for the defendants A. J. Harvey and Plankinton Building Properties, Inc. in the years 1924, 1925, and 1926.

In the year 1922 an action was begun against A. J. Harvey in the courts of the state of New York in which damages were claimed in the sum of $2,900,000 for breach of contract. Between September 23, 1924, and April, 1925, A. J. Harvey transferred substantially his entire interest in the stock of the various classes of the Plankinton Building Properties, Inc. In the fall of 1925 judgment was rendered against A. J. Harvey in the courts of the state of New York for a sum in excess of $720,000. Actions were begun in the state of Wisconsin seeking to domesticate this judgment and to set aside the transfers made by A. J. Harvey on the ground that they were fraudulent and void as to creditors. In the fall of 1926 the judgment rendered in the courts of New York against A. J. Harvey was reversed (*Bondy. v. Harvey,* 218 App. Div. 126, 217 N. Y. Supp. 877), and shortly thereafter the controversy was settled by Harvey for the sum of $12,500. Thereupon the suits pending against A. J. Harvey in relation to this matter were dismissed.

During all of the transactions Joseph A. Barly, Esq. was the attorney for A. J. Harvey and for the Plankinton Building Properties, Inc. This suit was begun on November 15, 1927, Mr. Barly appearing as attorney for the plaintiff, the executor of the will of Frances A. Harvey, deceased. Mr. Barly testified:

"I was formerly the attorney for A. J. Harvey, commencing sometime, I would say, in October, 1924, and running to the end of 1925, approximately; during that time I did work as an attorney for the Plankinton Building Properties, Inc. from approximately the first day of August, 1923, until the 8th day of December, 1926; a part of that

time I was under monthly retainer, as well as otherwise; that monthly retainer lasted for a period of one year—I think from the first day of October, 1925, to the last day of September, 1926, approximately, so that I was the regular attorney for the corporation in many matters during that period and for A. J. Harvey personally."

From this testimony it was apparent that Mr. Barly was the attorney and confidential adviser of A. J. Harvey and his company for the period during which the transfers and re-transfers were made. This action was begun by service of summons and complaint and a temporary order restraining the defendants Albert J. Harvey and the Plankinton Building Properties, Inc. from transferring the stock in question.

The conduct of Mr. Barly in thus commencing this action against his former clients, Albert J. Harvey and Plankinton Building Properties, Inc., concerning the very matters in which he had appeared as their attorney and confidential adviser is severely criticised. It must be borne in mind that Mr. Barly has had no opportunity to be heard upon this charge. He may have protested against the efforts of Albert J. Harvey to secrete his assets if such efforts were in fact made. If so, he may have pursued a course which would not subject him to severe censure upon strictly moral grounds. If he never advised, approved of, or encouraged any misconduct on the part of A. J. Harvey, if any such there was, he is free from blame so far as the conduct of A. J. Harvey is concerned; but having acted as the attorney of A. J. Harvey in respect to these matters, he was certainly guilty of a serious violation of the ethical standards which by common consent obtain among lawyers in commencing this action against his former client. Not only did he make use of his prior relationship in appearing as attorney for the plaintiff in this case, but during the course of the trial he retired from the trial of the case and was

called as a witness to a very material transaction which is alleged to have occurred on September 21, 1926, while he was still acting for A. J. Harvey. Not only that, Mr. Barly entered into a contract with the executor by which he was to receive a retainer fee in this case of $300 and twenty per cent. of any amount recovered in judgment or by settlement. Improprieties of this nature were dealt with by this court in *Michel v. McKenna*, 199 Wis. 608, 227 N. W. 396, and it is not necessary to repeat here what was said there. However serious this infraction of ethical standards may be, Albert J. Harvey at all times had knowledge of all these facts, and so far as the record discloses made no objection to the appearance of Mr. Barly as attorney for the plaintiff in this case. It must be held, therefore, under the decision in *Michel v. McKenna*, that his right to object thereto was waived. It is urged that as to the minor sons there could be no waiver, but as to the minor sons there was no professional misconduct. Mr. Barly never appeared as attorney for them.

An attorney is an officer of the court charged by every rule of law and by the highest ethical consideration to keep inviolate the confidence of his client, and he should never under any circumstances make that relationship a basis of personal gain in another action against his client. The excuse offered here is that the information of which Mr. Barly availed himself in this case was a matter of record and that therefore Mr. Barly was guilty of no breach of confidence in the commencement and prosecution of this action and that it was Mr. Barly's duty to prevent A. J. Harvey from perpetrating a fraud upon the executor of the estate of his mother, Frances A. Harvey. If A. J. Harvey at the time Mr. Barly was his attorney and confidential adviser was guilty of any misconduct, it was the duty of Mr. Barly to denounce it at that time and not await a contract by which he was to gain substantial benefits for himself. If there was

no fraud in the transaction, then the situation of Mr. Barly is still more questionable. He has no excuse whatever for making use of his confidential relations with Mr. Harvey to enrich himself.

Some criticism of the conduct of Walter H. Bender, Esq., is suggested in the briefs. Mr. Bender was retained after the commencement of this action to assist in the trial. Later Mr. Barly retired from the case and Mr. Bender became the attorney of record. The question of Mr. Bender's retainer to assist in the prosecution and trial of the case was submitted to the probate court of Cuyahoga county, Ohio, and approved by that court. He never stood in a confidential relation to any of the Harveys prior to his being retained in this case and at all prior times represented an interest adverse to the Harveys. He was therefore guilty of no breach of confidence in accepting a retainer to prosecute the claim of the administrator in this case against Albert J. Harvey and the other defendants. It is argued, however, that he should have refused to associate himself with Mr. Barly because by so doing he tacitly at least made himself a party to Mr. Barly's misconduct. This contention is considered to be unsound. It was no more Mr. Bender's duty to raise the question of Mr. Barly's misconduct in the case than it was the duty of the attorneys for the defendants or of the court itself when the court became fully advised in relation thereto. It was not raised by any one in the court below. This was due no doubt to the natural reluctance on the part of attorneys and even courts to charge their brother lawyers with unprofessional conduct. However, where professional misconduct involves the substantial rights of parties and clients, mere professional courtesy should not prevent an attorney from presenting the matter to the court. It is considered that in cases of this kind the same obligation rests upon the court and attorneys as rests upon them when it appears in the course of a trial that it is being conducted

under a champertous contract. In this state, contrary to the great weight of authority in most states, the case will be dismissed unless the record is purged of such offending matter. *Blixt v. Janowiak,* 177 Wis. 175, 188 N. W. 89, and cases cited.

While the course pursued by Mr. Barly in this case properly subjects him to criticism, under all the circumstances it cannot be held to be so prejudicial to the rights of the defendants as to warrant a reversal of the judgment. The case was not tried upon that basis. No issue was presented at any time respecting that matter. We find no reversible error in the record.

Subsequent to the judgment a motion was made for a new trial which was denied by the court, and from the order denying the motion for a new trial the defendants appeal. We have considered the matter presented upon this motion in connection with the matters presented by the record in the case and it is considered that it was a matter lying within the discretion of the trial court and that the denial does not constitute an abuse of discretion. The record in this case presents what may be properly designated as an unsavory mess. The trial court evidently had before it every consideration now presented upon this appeal with the single exception of the misconduct of Mr. Barly. There is nothing presented in the moving papers from which it can be said that there is any reasonable probability that the result of a second trial would be different than that reached upon this trial. Most of the matters presented on the motion for a new trial are either totally irrelevant to the issue or are cumulative of matters considered by the court in the course of the trial.

*By the Court.*—Judgment and order appealed from are affirmed.

FAIRCHILD, J., took no part.

On a motion by appellants for a rehearing there was a brief by *Bloodgood, Kemper & Passmore* and *Bloodgood, Stebbins & Bloodgood,* attorneys, and *Irving A. Fish, Francis Bloodgood, Jr., Jackson B. Kemper,* and *Albert K. Stebbins* of counsel, all of Milwaukee, and separate briefs for appellants Frank D. Harvey and Albert J. Harvey, Jr., by *E. C. Pommering,* guardian *ad litem,* and *Louis R. Potter,* his attorney, both of Milwaukee.

*Walter H. Bender* of Milwaukee, for the respondent.

The motion was denied, with $25 costs, on December 9, 1930.