ANGERS, Appellant, vs. SABATINELLI and others, Respondents.

*May 9—June 24, 1940.*

424

426

*Samuil Nissenbaum* of Milwaukee, for the appellant.

*L. L. Rieselbach* of Milwaukee, for the respondent Nick Sabatinelli.

*A. L. Skolnik* of Milwaukee, for the respondent Morris Stern.

For the respondents Northwestern Iron & Metal Company and Louis Hirsch there were briefs by *Alan I. Stern,* attorney, and *A. L. Skolnik* of counsel, both of Milwaukee, and oral argument by *Mr. Stern.*

For the respondent A. C. Schmidt there was a brief by *George J. Laikin* and *Norman S. Kupper,* both of Milwaukee, and oral argument by *Mr. Laikin.*

WICKHEM, J. The complaint is difficult to summarize. Its allegations will be put as tersely as possible in order that the confused and complicated fact situation may be somewhat clarified. There are so many parties defendant that no effort will be made to refer to them as defendants. We shall use their corporate names in the case of corporations and their surnames in the case of natural persons. It is alleged that the Northwestern Iron & Metal Company is an Illinois corporation with its place of business in the city of Chicago; that on December 2, 1935, it filed with the secretary of state the requisite papers to qualify it to do business in this state under provisions of sec. 226.02 (3) (f), Stats. It is alleged that the Cream City Wrecking Company, which is not a party to this action, is a Wisconsin corporation, which on December 2, 1935, executed a mortgage which was duly recorded in the sum of $5,000 on certain real estate ultimately sold to plaintiff subject to this mortgage. On August 5, 1935, the Cream City Wrecking Company executed a chattel mortgage to Harry Harris on a certain caterpillar crane belonging to it, and two

trucks. This mortgage was recorded in the office of the register of deeds, Milwaukee county. On July 29, 1936, the United States of America filed a tax lien in the United States district court in the sum of $5,822.37 upon the same real estate, and recorded a duplicate in the office of the register of deeds, Milwaukee county, on July 30th of the same year. On August 5, 1936, the mortgagor Cream City Wrecking Company made an assignment for the benefit of creditors to Louis Hirsch. This assignment included the above-mentioned real estate. Shortly thereafter, the assignee sold personal property. Morris Stern, acting as attorney for the Cream City Wrecking Company, drafted the assignment and thereafter acted as attorney for the assignee. The chattel mortgage previously mentioned was to secure one Harry Harris against loss by reason of advancing $60,000 to the Fisk Building Corporation and that Harris sustained no loss by reason of the advance. On August 24, 1936, Hirsch, as assignee, made a pretended conveyance of all the real and personal property of Cream City Wrecking Company of the approximate value of $43,000 to Gronic, Inc., for a pretended consideration of $1,305, and these assets were immediately turned over to Nick Sabatinelli, president and holder of the controlling interest in the Cream City Wrecking Company. Thereafter, Sabatinelli caused to be organized the Nelli Wrecking Company for the purpose of receiving the assets of the Cream City Wrecking Company thus fraudulently converted, and the Nelli Company received these assets without paying any consideration therefor. All of the foregoing acts are alleged to constitute a fraudulent conveyance of the assets of the Cream City Wrecking Company and to have been done with the consent and advice of the Northwestern Iron & Metal Company and Fisk Building Corporation. It is alleged that in spite of the fact that Hirsch knew that the chattel mortgage did not represent an indebtedness of the Cream City Wrecking Company, and that it should have been satisfied of record, he sold

the real and personal property of the Cream City Wrecking Company subject to the mortgage, receiving therefor the sum of $4,700, and appropriated this money through Stern to the Northwestern Iron & Metal Company, Fisk Building Corporation, and Nick Sabatinelli (a certified check for this amount was received by defendant Morris Stern as attorney for Harris, the Northwestern Iron & Metal Company, and the Fisk Building Corporation, and disbursed by Stern to his clients and to the defendant Nick Sabatinelli), that to defraud the creditors of the Cream City Wrecking Company defendants withheld and concealed "corporation stock and the proceeds of the Fisk Building Corporation from the inventory of the assignment for the benefit of creditors," as a result of which the title to the real estate purchased by plaintiff and for which he paid adequate consideration "became tainted with fraud and subject to lawsuits for the setting aside the conveyance by any creditors of the Cream City Wrecking Company, and further this plaintiff will be obliged to pay such additional sum, if he redeems, to persons wholly not entitled to receive said moneys, and probably subjected to additional lawsuits;" that plaintiff agreed to purchase the real estate involved in this action, and is obligated to pay the sum of $2,986 to the Nelli Wrecking Company, one of the defendants herein, which he is willing to pay to such parties as the court may determine to be the proper parties to whom payment should be made when a good and valid title upon the property mentioned is established; that this action was brought for the purpose of restraining the Northwestern Iron & Metal Company from enforcing its judgment of foreclosure upon the real estate herein described and requiring the Northwestern Iron & Metal Company to make application of the said $4,700 as fraudulently received by its agent and attorney in the sale of the assets of the Cream City Wrecking Company upon the mortgaged indebtedness; that no relief is sought from the Cream City Wrecking Company. Plaintiff seeks to have Stern, Harris,

Sabatinelli, and the Northwestern Iron & Metal Company deliver to court the sum of $4,700 for the benefit of creditors of the Cream City Wrecking Company and apply the same on the mortgage. It seeks to have Louis Hirsch account and pay into court all moneys in his possession not legally disbursed for the benefit of creditors of the Cream City Wrecking Company, requiring the Northwestern Iron & Metal Company, Sabatinelli, the Nelli Wrecking Company, Stern, Fisk Building Corporation, Harry Harris, Gronic, Inc., to return and deposit in this court all of the assets, real and personal, or any moneys obtained from the sale, transfer, or assignment for the benefit of creditors of the assets of the Cream City Wrecking Company. It is asked that plaintiff have a lien upon the premises in the amount of $4,605, and such further sums as plaintiff has paid for taxes pending the determination of this action in the event that the court should find that the assignment for the benefit of creditors was a fraud and that no title passed from the Cream City Wrecking Company to plaintiff; that if the court finds plaintiff's title is good and valid, plaintiff pay into court the sum of $2,986 to be held in trust for the benefit of creditors of the Cream City Wrecking Company; and that a receiver be appointed for the Cream City Wrecking Company to receive and distribute these assets in accordance with law.

Plaintiff commences his appeal with a series of attacks upon the form of the demurrers. Some of the demurrers are inartificially put. For example, the demurrers of Stern, Hirsch, and Sabatinelli demur on the ground that there is a defect of parties, in that plaintiff is not the real party within the meaning of sec. 260.13, Stats. Sec. 263.06 (4) permits a demurrer upon the ground that there is a defect of parties, plaintiff or defendant. A demurrer on this ground does not reach the defect that the plaintiff is not the real party in interest. It is grounded upon the fact that some necessary party has been omitted, not that a person who assumes to sue as

plaintiff has only a nominal interest. *Baker v. Hawkins,* 29 Wis. 576; *Arzbacher v. Mayer,* 53 Wis. 380, 10 N. W. 440; *McKenney v. Minahan,* 119 Wis. 651, 97 N. W. 489. Each of the demurrants, however, filed a general demurrer, grounded not upon the contention that plaintiff is a mere nominal party but that the complaint shows no breach of duty to plaintiff. Objections to the form of the general demurrers are inconsequential and hardly warrant discussion. It is objected that some of the demurrers do not state that the objection appears "on the face of the complaint." All of the demurrers set forth that the complaint does not state facts sufficient to constitute a cause of action. This necessarily implies that the complaint does not within its four corners or upon its face state sufficient facts. Objection is made to one of the demurrers that it reads: "The complaint does not state facts sufficient to constitute a cause of action *in favor of the plaintiff.*" What has been said before disposes of this. If the complaint does not state facts sufficient to constitute a cause of action in favor of plaintiff, it states no cause of action so far as the plaintiff is concerned. These objections have no merit whatever.

Coming to matters of substance, the complaint is unnecessarily complicated and offers considerable resistance to an accurate analysis. Reduced to its lowest terms, plaintiff is an ordinary purchaser of real estate subject to a mortgage who claims that the conveyance to him was fraudulent as to creditors of an ancestor in title. Having paid only part of the stipulated consideration before learning of the fraudulent character of the transfer, he claims that he may not with impunity complete the payments, and that he is liable to an action by creditors to set aside the conveyance or to having the property executed upon by creditors seeking to satisfy their judgments. For this reason he proposes to join all creditors and all participants in the alleged fraud in order that he may either

clear his title or, in case the court declares the transfer fraudulent, get credit for sums already paid by him. In addition, he proposes to set aside the real-estate mortgage subject to which he took title; get back his payments of purchase price, taxes, and improvements, on the theory that the assignment for the benefit of creditors is void; reach assets of the Cream City Wrecking Company claimed to have been fraudulently converted or misappropriated and have them applied to outstanding liens upon the real estate or to payment of the claims of general creditors; and secure some relief by reason of alleged fraud on the part of the seller in falsely representing to plaintiff that the mortgage to the Northwestern Iron & Metal Company was the only outstanding lien upon the premises.

We shall treat first plaintiff's contention that the complaint states a cause of action in his favor as an innocent purchaser for value of premises fraudulently conveyed who, prior to completing the stipulated payments to his fraudulent grantor, has learned of the fraud and is faced with dilemmas from which a court of equity should extricate him.

In considering plaintiff's real or supposed dilemmas it is essential to begin with an examination of the Uniform Fraudulent Conveyance Act, and to determine its proper construction in the light of authorities construing it and perhaps of those antedating it, and where the act makes no provisions specifically applicable to the situation to apply such general rules of law and equity as are established.

Sec. 242.03, Stats., defines thus fair consideration:

"Fair consideration is given for property, or obligation, (a) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) when such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

The generally adopted rule prior to the act was to the effect that a grantee from a fraudulent grantor who, after making in good faith a part payment on the purchase price, has learned of the fraudulent purpose of the conveyance, must as against the creditors of his grantor decline to make further payments to the latter. *Florence Sewing Machine Co. v. Zeigler*, 58 Ala. 221; *Work v. Coverdale*, 47 Kan. 307, 27 Pac. 984; *Crockett v. Phinney*, 33 Minn. 157, 22 N. W. 292; *Riddell v. Munro*, 49 Minn. 532, 52 N. W. 141.

While there was some authority to the contrary, the foregoing represented the overwhelming weight of authority. It was suggested by Mr. Bigelow in his treatise on Fraudulent Conveyances, Knowlton's Revised Edition, page 569, that in the case of an innocent grantee who had made part payments, the rule should be that the transaction is valid, but that the grantee must withhold the balance of the purchase price and make it available to the grantor's creditors. The application of this doctrine would give such a grantee the right to interplead his grantor and the creditors of the grantor in order that he might pay the money into court and that they might litigate the right to the unpaid balance. There is a *dictum* in *Rosenheimer v. Krenn*, 126 Wis. 617, 629, 106 N. W. 20, which seems to accord with Mr. Bigelow's views. The court there said:

"Again, if a conveyance is actually void because made with intent to defraud creditors so that neither the first nor any subsequent grantee obtains any title in fact valid against creditors, yet the latter may be denied enforcement of their rights against the land in favor of a *bona fide* purchaser for a valuable consideration; but under general equitable rules such denial will go no further than is necessary to protect him in his purchase, which can be accomplished by requiring that he pay them any portion of the consideration which he can control at the time he learns of their rights, unless some modification is accomplished by statute."

However, the doctrine that creditors may set aside such a conveyance was overwhelmingly established prior to the act. With the authorities in this state, it must be held that sec. 242.03, Stats., means to exclude from the definition of fair consideration such executory promises by the grantee to pay the balance of the purchase price as are not in the form of negotiable instruments and already negotiated to holders in due course. See *Hulsether v. Sanders,* 54 S. D. 412, 223 N. W. 335; *Virgil State Bank v. Wahl,* 56 S. D. 318, 228 N. W. 392. In *Farmers Exchange Bank v. Oneida Mfg. Co.* 202 Wis. 266, 232 N. W. 536, a contrary view is expressed, but we think that this opinion cannot be sustained and must be overruled. The first conclusion, therefore, is that plaintiff may not continue payments to his fraudulent grantor upon learning that the conveyance to him was one designed to hinder, delay, or defraud creditors of the grantor, and that assuming the fraudulent purpose of the grantor, the conveyance is subject to being set aside by creditors of the latter.

Sec. 242.09, (2), Stats., provides:

"A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment."

Applied to a situation where a grantee innocently makes part payments upon the purchase price prior to learning of the purpose of the conveyance, this section plainly means that he may have a lien upon the premises as security for these payments. This is in accordance with the law prior to the enactment of the uniform act, and there is no reason to suppose that this section was designed to change the rule. *First National Bank of Appleton v. Bertschy,* 52 Wis. 438, 9 N. W. 534; *Kickbusch v. Corwith,* 108 Wis. 634, 85 N. W. 148; *Crockett v. Phinney,* 33 Minn. 157, 22 N. W. 292. The act is silent as to maintenance charges, but it is well established that at least as to grantees who are guilty of no actual fraud pay-

ments made for maintenance and preservation of the property from tax and other liens are allowed as liens to the grantee as a condition upon relief to any creditor seeking to set aside the conveyance. See cases in note, 8 A. L. R. 528. This is in accordance with the Wisconsin rule. *Cook v. Berlin Woolen Mill Co.* 56 Wis. 643, 14 N. W. 808; *Kickbusch v. Corwith, supra.* There is a contrariety of opinion in the case of a guilty grantee. However, the better rule would seem to be to protect even the guilty grantee in such case because such payments are for the benefit of the creditors as well as for himself, and are essential to the preservation of property for the creditors in the event that they should seek to reach it for the debts of the grantor. Hence, it seems clear that plaintiff in this case would be entitled to a lien for sums expended for the maintenance of the property or for the purpose of preventing tax liens even after he had learned of the fraudulent purpose of the transaction but before any action by creditors to set aside the conveyance. See *Loos v. Wilkinson,* 113 N. Y. 485, 4 L. R. A. 353. As far as the grantor is concerned, it is the well-established rule that as between fraudulent grantor and grantee the transfer is valid. *Marshall v. Marshall,* 230 Wis. 504, 284 N. W. 541; *Jandl v. Guziekiewicz,* 195 Wis. 258, 218 N. W. 593; *Harvey v. Harvey,* 202 Wis. 553, 231 N. W. 580; *Wiedner v. Parsons,* 206 Wis. 438, 240 N. W. 367. The weight of authority is to the effect that the fraudulent grantor may not enforce any performance on the part of the grantee which remains executory, although as to this point there is a conflict. *Moseley v. Moseley,* 15 N. Y. 334; *Nellis v. Clark,* 20 Wend. (N. Y.) 24, same case, 4 Hill (N. Y.), 424; *Schermerhorn v. De Chambrun* (2d Cir.), 64 Fed. 195; *Rosenbaum v. Huebner,* 277 Ill. 360, 115 N. E. 558; *Palmer v. Palmer,* 100 Neb. 741, 161 N. W. 277.

It is further established that, generally speaking, the fraudulent-conveyance statutes are for the benefit of creditors and not grantees. *Eaton v. White,* 2 Wis. *292; *Kimball v.*

*Post,* 44 Wis. 471. We have been unable to discover any cases where a fraudulent grantee, however innocent in fact, has been given affirmative relief in any such action as is here attempted. In such cases as we have been able to discover, the creditors of the grantor have moved to set aside the conveyance, and relief to the grantee has been given as a condition to that granted the creditors. See Glenn, Fraudulent Conveyances, p. 261. An apparent exception to this seems to be *Bond v. Warren County Bank,* 201 Iowa, 1175, 207 N. W. 233, where a grantee who was guilty of no actual fraud was permitted affirmatively to assert and enforce his lien upon the property conveyed upon which the creditors had executed and sought to sell in discharge of their claim. From what has heretofore been said it must be concluded, (1) that if the facts are as stated in the complaint, the conveyance to plaintiff was void; (2) that plaintiff may not make further payments to the grantor; (3) that as to payments made before knowledge of the fraud, either upon the purchase price or for maintenance and taxes, he may have a lien good as against the creditors; (4) that for such maintenance charges as are essential to the preservation of the property as a security, even though made after knowledge of the fraud, plaintiff may also have a lien; and (5) that plaintiff may successfully defend an action by the grantor to recover the balance of the purchase price. All this might seem to lead to the conclusion that plaintiff, being fully protected, is in no dilemma from which he requires extrication.

While the matter is not free from difficulty, we conclude that the following circumstances require a different conclusion: (1) Plaintiff must decide at his peril whether the fact of fraudulent purpose can actually be established; (2) he must make his decision as to what to do with the property in the face of uncertainty whether the creditors propose to disturb his ownership and possession; (3) in case the creditors enter judgment against the ancestor of his grantor and levy legal

executions, there is uncertainty as to the means by which he may save his lien or enforce it; (4) the property has been foreclosed and until the rights of the creditors are established or denied there is great uncertainty as to plaintiff's right to redeem as well as the advisability of attempting this course of action. The Uniform Fraudulent Conveyance Act is, generally speaking, for the benefit of creditors and not purchasers, although it does provide for the protection of the innocent grantee to the extent of his payments before notice of the fraud. This would seem to us to warrant an action by him to establish this lien. Apart from this, it is evident that plaintiff faces an intolerable dilemma from which he is entitled to be relieved. Plaintiff does not, of course, state a good cause of action for an interpleader for the reason that he asks not merely to pay money into court but demands relief wholly separate and apart from this. *Bird v. Fake,* 2 Pin. 69; *McDonald v. Allen,* 37 Wis. 108. He is not asking to be relieved from contesting issues which do not concern him. He is vitally concerned with the issues. However, it seems to us that he does at least state a good cause of action for declaratory relief under sec. 269.56, Stats. The scope of this remedy is well stated in *Heller v. Shapiro,* 208 Wis. 310, 242 N. W. 174, and there is no occasion for elaboration here. The only defendants against whom such a cause of action is stated are, (1) the creditors of the Cream City Wrecking Company, and (2) the Nelli Wrecking Company, his immediate grantor. Since the creditors who were made parties did not demur, the only order that requires reversal, so far as the points above discussed are concerned, is that sustaining the demurrer of A. C. Schmidt, receiver of the Nelli Wrecking Company.

We consider that the allegations concerning wrongful disposition of the assets of the Cream City Wrecking Company, the validity of the chattel mortgage given defendant company, and the supposed fraudulent character of the assignment for benefit of creditors, state no cause of action in plaintiff's favor

against any of the defendants. Plaintiff was not a creditor of the Cream City Wrecking Company at the time of any of the transactions referred to, and there is nothing in the allegations of the complaint which indicates that the transactions were void as to future creditors (assuming that plaintiff now is to be so classified, which we think he is not). This leaves two matters to determine.

Plaintiff claims that a cause of action is stated against Northwestern Iron & Metal Company to set aside as void the first mortgage held by them and subject to which plaintiff took his conveyance to the property. The allegations in this respect are that the Northwestern Iron & Metal Company is an Illinois corporation; that on December 2d it conformed to the requirements of sec. 226.02 (3) (f), Stats.; that on December 2, 1935, the mortgage in question was executed; that it was executed, however, in pursuance of an agreement dated November 27, 1935, prior to the time when the Northwestern Iron & Metal Company had complied with ch. 226 of the 1935 statutes; that on or about January 12, 1938, the Northwestern Iron & Metal Company obtained a judgment of foreclosure founded upon this note and mortgage and that a sheriff's sale was had pursuant thereto on July 17, 1939, but that confirmation of same was denied on August 10, 1939. Plaintiff's contention is based on sec. 226.02 (9) which provides that "every contract made by or on behalf of any such foreign corporations, affecting its liability or relating to property within this state, before it shall have complied with the provisions of this section, shall be void on its behalf and on behalf of its assigns, but shall be enforceable against it or them." There are two answers to this contention. In the first place, according to the allegations of the complaint the mortgage was not executed until after the mortgagee had fully satisfied the statutory requisites. In the second place, even if this were not so, and if as intimated in the complaint the fact that the mortgage was founded upon a preliminary agreement antedating Decem-

ber 2, 1937, is legally material, the whole matter is concluded by the foreclosure judgment. The question could and should have been litigated in that action, and plaintiff not having done so, the judgment is *res judicata* as to the validity of the note and mortgage.

It is next claimed that a cause of action is stated against Sabatinelli for fraud in representing that the first mortgage above referred to was the only outstanding lien upon the premises. The allegation is that Nick Sabatinelli, as agent and owner of said Nelli Wrecking Company, knowingly and fraudulently represented to this plaintiff that there were no liens other than the mortgage of the Northwestern Iron & Metal Company on said property in the sum of $5,000, but in truth and fact there was a lien in favor of the United States government upon said real estate in the sum of $5,822.37. This is followed by the allegation that on the date of the transfer to him plaintiff was not aware of the existence of the lien of the United States government. Plaintiff took from the Nelli Wrecking Company by quitclaim deed, which is stated in the complaint to have been "subject to mortgages and liens of record." The first attack upon the complaint by Sabatinelli is based upon the fact that the government lien was duly recorded and the contention that plaintiff was not entitled to rely upon any representations as to recorded liens. This point was decided adversely to defendant's contention in *Woteshek v. Neuman,* 151 Wis. 365, 138 N. W. 1000, in which this court held that a vendee was entitled to rely upon positive assertions by the vendor concerning facts which were matters of record. For a complete review of the authorities on this subject see 33 A. L. R. 853. To the same effect see sec. 540, Restatement of Torts.

The sole question, then, is whether it sufficiently appears from the face of the complaint that plaintiff relied upon the representations. There is no such express allegation to this effect, and if this essential of the cause of action is to be sup-

plied by implication, it must be founded upon the representation that plaintiff did not know of the existence of the lien at the time of the conveyance. We conclude that this allegation is not an adequate substitute for an express allegation of reliance. If plaintiff knew the true facts involved in the representation there could, of course, be no reliance. The fact that he did not know them, however, and an allegation to this effect, is not sufficient to show reliance. See *Ott v. Hood,* 152 Wis. 97, 139 N. W. 762. In addition to this, it appears from the complaint that plaintiff bought property assessed at $22,000 and appraised at $18,380, for not more than $4,590 over and above mortgages and recorded liens. If he supposed that the property was subject only to a mortgage of $5,000 he was getting the property for about fifty per cent of its assumed value. While this circumstance is not conclusive, it is effective to preclude an inference of reliance where this fact is not expressly stated.

It is next contended that the order of the trial court giving plaintiff twenty days to amend his complaint upon condition that he pay motion costs of $10 to each defendant is without authority. Sec. 271.07, Stats., provides:

> *"Costs on motion.* Costs may be allowed on a motion, in the discretion of the court or judge, not exceeding $10, and may be absolute or directed to abide the event of the action."

Plaintiff claims that the costs are not recoverable on an order sustaining a demurrer "other than under the general provisions for taxing costs in favor of the prevailing party at the final determination of the litigation, except as a condition of answering or serving an amended pleading." *Schroeder v. Richardson,* 101 Wis. 529, 78 N. W. 178; *Schmidt v. Joint School District,* 146 Wis. 635, 132 N. W. 583. Having filed a single complaint, and there being only one complaint to amend, plaintiff asserts that the costs are limited to $10. The contention is without merit. While there is one complaint,

plaintiff attempted to state several causes of action against several different defendants. There were five separate demurrers and five separate orders disposing of these demurrers. Plaintiff's leave to amend was a leave granted as to each of the five demurrants, and each was entitled to statutory costs.

Plaintiff contends that certain orders entered by the court on November 6, 1939, and November 14, 1939, respectively, were without jurisdiction. The order of November 6th dissolved an order of September 6, 1939, by the terms of which the Northwestern Iron & Metal Company was restrained from transferring, hypothecating, selling, or conveying the note and mortgage involved in a foreclosure action heretofore referred to. In view of plaintiff's appeal, however, it was ordered that upon an execution of a proper undertaking by plaintiff in the sum of $1,000 to pay costs and damages which might be awarded against him on the appeal if the orders were affirmed in favor of the Northwestern Iron & Metal Company, the restraining orders be continued until the decision of the appeal, and the sheriff's sale postponed for six months from November 13, 1939. The order of November 14th was entered upon motion of plaintiff and modified this order in certain respects. We are of the opinion that the court properly exercised its discretion in dissolving the temporary injunction in view of the fact that plaintiff succeeded in stating no cause of action against Northwestern Iron & Metal Company. We see no profit in discussing the question whether a continuance of the restraining order upon the terms specified was within the trial court's discretion. If it was not, we fail to see how that fact could be of any benefit to plaintiff. The court at all events had jurisdiction to dissolve the restraining order. We do not discover in the record any evidence of plaintiff having executed such a bond or undertaking as is contemplated by the order. This being true, there is nothing that can profitably be discussed here.

*By the Court.*—The order sustaining the demurrer of A. C. Schmidt, receiver of the Nelli Wrecking Company, is reversed; all other orders appealed from are affirmed. Cause remanded with directions for further proceedings according to law. Respondents to have costs in this court.