F. H. GOTTWALS, APPELLANT, *v.* JOHN S. RENCHER AND VELMA RENCHER, RESPONDENTS.

No. 3276

August 4, 1939.                    92 P. (2d) 1000.

## OPINION

By the Court, EATHER, District Judge:

Appellant, owner of an undivided half interest, and respondents, owners of the other undivided half interest in certain property at Boulder City, became involved in partnership difficulties, and the former, as plaintiff, brought suit against respondents (defendants) in the

Eighth judicial district court, Clark County. The property involved consists of buildings and structures erected upon three city lots, a lease of said premises from the United States to appellant, and certain furniture and fixtures. Pursuant to an agreement of copartnership, the respective parties operated certain businesses in and upon said premises from November 1, 1935, until June 4, 1937. On the last-mentioned date a receiver was appointed by said district court, who after qualifying took possession of said properties and business, and has ever since operated, conducted and administered the same.

After trial, judgment was rendered and entered in January 1939, the last two paragraphs of the judgment as entered, reading as follows:

"That from the proceeds of such sale and from any other money belonging to the partnership in the Receiver's hands, said Receiver pay: (a) the expenses of the receivership, including compensation of the Receiver and of his attorney and other employees and the expenses incurred in operating the business during the receivership; (b) the general creditors of the business or partnership, charging to Plaintiff individually the item of Six Hundred Forty-five Dollars ($645.00) unpaid on accounts incurred by him prior to October 25, 1935, and also any other obligations incurred by Plaintiff prior to November 1, 1935; (c) to the Defendants the sum of Three Thousand Six Hundred Sixty-four and $51/100$ Dollars ($3,664.51), plus a sum equal to all Plaintiff's withdrawals since the appointment of the Receiver, less any withdrawals by Defendants since said appointment, and plus also a sum equal to all obligations incurred by Plaintiff prior to November 1, 1935, and paid by the Receiver, plus Defendants' costs incurred herein taken at One Hundred One and $35/100$ Dollars ($101.35); and (d) the residue equally to Plaintiff and defendants; and that said Receiver render unto the Court an account and report of his administration and of said sale; and obtain the confirmation and approval

of the Court before paying over the sums herein mentioned.

"That in the event the funds in the hands of the Receiver from the sale of the properties and from all other sources be insufficient to pay the Defendants in full all of the sums mentioned in Subdivision (c) of Paragraph 8, after paying all sums mentioned in Subdivisions (a) and (b) of said Paragraph, then and in that event the Defendants have personal judgment against Plaintiff for the amount of such deficiency."

On February 25, 1939, the receiver noticed certain of said properties for sale on March 3, 1939. On March 2, 1939, the trial court denied plaintiff's motion for a new trial. On the same day (March 2) plaintiff served and filed his notice of appeal from said judgment and from the order denying his motion for new trial, and also filed his undertaking on said appeal. On said 2d day of March plaintiff served upon the attorneys for respondents and the attorneys for the receiver a written notice that he had perfected said appeal; said notice contained a demand that the respondents and the receiver "desist and refrain from all further acts and proceedings relating to the sale of the property, noticed to be sold by said Receiver herein, on the 3rd day of March, 1939, and that said sale be not made of said property, or any part thereof." On March 3 the receiver sold said property to respondent John S. Rencher for $5,200. On March 7 the receiver filed his return and account of sale and petition for order confirming and approving said sale. On the same day the district court fixed March 18 as the time for hearing said return, account and petition. Also, on the same day (March 7), receiver served upon appellant notice of the time and place so fixed by the court for the hearing of said return, account, and petition.

On March 11 appellant moved this court for an order staying the hearing of said return, account, and petition, vacating the order setting said hearing, vacating

said sale and for a writ of supersedeas. The motion was made upon the ground that said proceedings were stayed by the perfecting of plaintiff's appeal to this court, and is based upon the notice of motion and the affidavit of appellant's attorney.

Section 16 of the 1937 new trials and appeals act, Stats. of Nevada, 1937, chap. 32, p. 53, at p. 58, provides in part that to render an appeal effectual for any purpose, a written undertaking in the sum of $300 must be filed, or the sum of $300 deposited with the clerk of the district court within five days after the notice of appeal has been served.

Section 17 of said act provides in part that if the appeal be from a judgment or order directing the payment of money, or from an order dissolving or refusing to dissolve an attachment, it shall not stay the execution of the judgment or order unless a written undertaking be given, conditioned as specially provided in said section 17.

Section 19 of said act provides in part that if the judgment or order appealed from directed the assignment or delivery of documents, or personal property, the execution of the judgment or order shall not be stayed by or upon appeal, unless the things required to be assigned or delivered be assigned and placed in the custody of such officer or receiver as the court may appoint, and an undertaking be entered into to be approved by the court or judge and in such amount as the court or judge may direct, and conditioned as specially provided in said section 19.

Section 20 of said act provides in part that if the judgment or order appealed from direct the execution of a conveyance or other instrument, the execution of the judgment or order shall not be stayed by the appeal until the instrument is executed and deposited with the clerk, and an undertaking executed to be approved by the court or judge in such amount as the court or judge may direct, and as specially provided in said section 20.

Section 21 of said act reads as follows: "If the judgment or order appealed from direct the sale or delivery of possession of real property, the execution of the same shall not be stayed unless a written undertaking be executed on the part of the appellant, with two or more qualified and sufficient sureties, or a bonding or surety company qualified to do business in the State of Nevada, to the effect that during the possession of such property by the appellant he will not commit, nor suffer to be committed, any waste thereon, and that if the judgment be affirmed he will pay the value of the use and occupation of the property from the time of the appeal until the delivery or possession thereof, pursuant to the judgment or order, not exceeding a sum to be fixed by the judge of the court by which the judgment was rendered or order made, and which shall be specified in the undertaking. When the judgment is for the sale of mortgaged premises, and the payment for a deficiency arising upon the sale, the undertaking shall also provide for the payment of such deficiency. In all other cases, not provided for in sections 16, 17, 19, 20, or 21 hereof, the amount and conditions of the undertaking to stay the execution of the judgment or order shall be fixed by the court or the judge thereof, in which the judgment was rendered or the order made."

Section 24 relates to the justification of sureties on undertakings on appeal, and to deposits of money in lieu of such undertakings.

Section 25 provides: "In cases not provided for in sections 17, 19, 20, 21 or 24 of this act, the perfecting of an appeal by giving the undertaking, and the justification of the sureties thereon, if required, or making the deposit mentioned in section 16, shall stay proceedings in the court below upon the judgment or order appealed from, except that where it directs the sale of perishable property the court below may order the property to be sold, and the proceeds thereof to be deposited to abide the judgment of the appellate court."

District court rule XXVI provides in part that: "No stay of execution upon motion for a new trial shall be granted or allowed, nor execution or other proceeding be stayed in any case, except upon the giving of a good and sufficient undertaking, in the manner and form as other undertakings are given, to be approved by the judge, with at least two sureties, for the payment of the judgment or debt, or performance of the act directed by the judgment or order, in such amount as may be fixed by the judge."

Without a stay of proceedings in the lower court, it seems clear that appellant might suffer irreparable injury in the event that his appeal should be successful. The main question to be determined by this court on appellant's motion is whether the perfecting of his appeal stayed further proceedings in the district court or whether, as contended by respondents, such stay could only be effected by the giving of a stay bond. Appellant relies upon section 25 of the 1937 new trials and appeals act, while respondents base their contention on section 21 of said act, and district court rule XXVI.

Sweeney v. Karsky, 25 Nev. 197, 58 P. 813, cited by respondents, grew out of an election contest. The losing party appealed to the supreme court and filed a stay bond in addition to the $300 appeal bond. The judgment having been affirmed, action was commenced on the undertaking to recover the fees and emoluments of office. Upon appeal from a judgment in favor of plaintiff, appellants contended that the undertaking was not authorized by law and was therefore void. This court, in its opinion, said in part: "It is provided in the last clause of section 3367 that, in all cases not mentioned, the amount of the undertaking to stay the execution of the judgment or order shall be fixed by court or the judge thereof. The stay of execution of judgment in contested election cases, not being specifically provided for, comes under this clause, and the recitals of the undertaking sufficiently show that all required steps

were taken to render it a valid contract under the law."

O'Donnell v. District Court, 40 Nev. 428, 165 P. 759, 760, was an appeal from an order appointing a guardian. Appellant filed only an undertaking on appeal in the sum of $300. This court, holding that the appeal stayed proceedings in the court below without the giving of any further bond, said: "The undertaking on appeal filed by petitioner conforms to section 404 of the Civil Practice Act, and, as the procedure authorized by section 6162, Revised Laws, is not a case provided for in sections 404, 405, 408, and 409 of the Civil Practice Act, the perfecting of the appeal by giving the undertaking, as prescribed by section 404, stays proceedings in the court below upon the judgment and order appealed from. Section 5355, Revised Laws. It is argued by respondents that it is against the interest of petitioner, and against public policy, to permit petitioner to manage her property pending the time of her appeal. And it might have been suggested, by way of argument, that an appeal in such cases defeats the purpose of the statute. This position has been ruled upon adversely to respondents by the Suprme Court of California in construing a similar statute. Coburn v. Hynes, 161 Cal. 685, 120 P. 26; In re Woods' Estate, 94 Cal. 566, 29 P. 1108; In re Moss, 120 Cal. 695, 53 P. 357. We are powerless to remedy what may be a defect or omission in the Civil Practice Act."

In Dunphy v. McNamara, 50 Nev. 113, 252 P. 943, 945, the appeal was from an order appointing a temporary trustee with directions to him to protect and preserve the property involved pending the litigation. The defendants perfected their appeal by giving the statutory $300 appeal bond, and contended that the appeal operated to suspend the order appealed from, and that appellants were entitled to the possession of the trust property pending the appeal. This court ruled against that contention, and after citing In the Matter of Real Estate Associates, 58 Cal. 356, and quoting from Morbeck v. Bradford-Kennedy Co., 18 Idaho, 458, 110 P. 261,

proceeded to say: "So, in this proceeding, it clearly appears that it is necessary that the property involved should be preserved in statu quo as nearly as may be, pending the litigation concerning it, and both upon principles of equity and upon the authorities construing statutes substantially the same as ours we hold that the order appointing George Russell, Jr., temporary trustee or receiver pendente lite was not vacated or superseded by the giving of the statutory undertaking on appeal in the sum of $300. See 3 C. J. 1285, note 31."

So far as we have been able to learn, the California statutes have never contained a provision similar to the last sentence of section 21 of our 1937 new trials and appeals act. In Oregon, however, in the case of In re Workman's Estate, 156 Or. 333, 65 P. (2d) 1395, 68 P. (2d) 479, the supreme court was confronted with statutory provisions similar to section 25, and the last sentence in section 21 of our 1937 act. The confusion naturally resulting from such provisions is well illustrated in this case, as well as in Dunphy v. McNamara supra; for, just as in the latter case Justice COLEMAN dissented, basing his dissent on the statute corresponding to section 25 of our said 1937 act, so in the Oregon case three of the seven justices dissented, one of the grounds of their dissent being that, in their opinion, under the provisions of that portion of their appeals statute corresponding to section 25 of the Nevada act of 1937, the appeal from an order denying and overruling a petition to be appointed executor operated to stay proceedings in the lower court, notwithstanding no supersedeas bond was given.

Respondents contend that this court is without jurisdiction to hear or determine appellant's motions, and cites 60 C. J. 1156, placing particular emphasis upon that portion of the passage cited, which reads: "But an application for a supersedeas of execution issuing on a judgment from the court below must first be made to that court, and refused by it, before the supreme court will hear such application." Two Arkansas cases are

cited in support of the foregoing rule, but an examination of them has disclosed that both are criminal cases, not applicable to the pending motion. This court, on appeal, has power to stay proceedings in the district court. In re Workman's Estate, supra; Lund v. Idaho & Wash. Northern R., 48 Wash. 453, 93 P. 1071; Hough v. Roberts Min. & Mill. Co., 58 Nev. 317, 78 P. (2d) 102; Bancroft's Code Pr. & Rem., vol. 8, pp. 8716, 8717, sec. 6597; Bancroft's Code Pl., Pr. & Rem., Ten Year Supp., vol. 5, 419, sec. 6597.

Aside from the perplexing questions arising out of the conflict in the provisions of our appeals statutes hereinbefore mentioned, respondents contend that this case comes within the provisions of the first part of section 21 of the 1937 act, for the reason that the major portion of the property ordered sold is real property within the meaning of that section. They cite Adams v. Smith, 19 Nev. 259, at pages 272–273, 9 P. 337, 10 P. 353. Appellant, on the other hand, maintains that said property is personal property under the general rule that real property does not include estates less than freehold, such as leaseholds and estates for years which are, he contends, chattels real. He cites 50 C. J. 747, 748, notes 20, 21; and 50 C. J. 763, notes 24–28. It is clear that the trial court considered the property personal property, because in a modification of the judgment, appearing as "Exhibit B" in appellant's motion, the trial court in prescribing the time for posting and publication of notice of sale, followed the statutory provisions for the sale of personal, not real, property.

It is not necessary, however, for the court on this motion to determine whether the property ordered sold is real or personal property; because, conceding it to be real property, section 21 of the 1937 appeal act is not applicable, for the reason that said property, ever since the receiver took possession in June 1937 has been in his possession and not in the possession of appellant or any person subordinate to him. Zappettini v. Buckles,

167 Cal. 27, 138 P. 696; Bancroft's Code Pr. & Rem., vol. 8, p. 8692; Keeling Collection Agency v. McKeever, 209 Cal. 625, 289 P. 617; Bancroft's Code Pl., Pr. & Rem., vol. 5, 4184, sec. 6573.

■ The judgment in this case provides for a personal judgment against plaintiff for the amount of any deficiency, should the funds realized from the sale be insufficient to pay defendants in full all of the sums mentioned in subdivision (c) of paragraph 8 of said judgment, after paying all sums mentioned in subdivisions (a) and (b) of said paragraph. But even if the property ordered sold should be conceded to be real property, the judgment for a deficiency would not bring this case within section 21 of the act of 1937. Arrington v. Wittenberg, 11 Nev. 285; Bancroft's Code Pr. & Rem., vol. 8, p. 8692, note 20.

Until the last few years, the last sentence of the section corresponding to section 21 of the 1937 act read: "In all other cases, not hereinbefore mentioned, the amount of the undertaking to stay the execution of the judgment or order shall be fixed by the court or the judge thereof." Comp. Laws, sec. 8898. Appellant argues that the effect of the change in section 21, specifically excepting section 16, has been to remove any apparent conflict between section 25 and the last sentence of section 21. We are unable to concur in this view.

Appellant also maintains that section 25 of the 1937 act should control, under the rule that in case of conflicting provisions in the same statute, the last in point of time or order of arrangement should prevail. Ex parte Smith, 33 Nev. 466, at pages 480, 481, 111 P. 930; 59 C. J. 999, 1000; 25 R. C. L. 1011, 1012. But we are not disposed to consider this rule as decisive in this case, particularly in view of the fact that the conflicting provisions under discussion have been, with some variations, in our appeal statutes for approximately seventy years, and have, with slight modifications from time to

time, been retained to the present time even when preceding acts have been supplanted by later ones.

■ All efforts of this court to reconcile the provisions mentioned have proved unavailing, nor have we been able to determine whether one provision should prevail over the other. Having in mind the inherent powers of the court, and in view of our holding in Dunphy v. McNamara, supra, the only conclusion we have been able to arrive at is that until the legislature sees fit to clarify this situation, a stay bond, in a case not provided for in sections 17, 19, 20, 21, or 24 of the new trials and appeals act of 1937, should be required only when it is made to appear that on principles of equity and justice such bond is necessary to protect an appellee against damages he may sustain by reason of an unsuccessful appeal. No showing of damage which may result from an unsuccessful appeal in this case has been made by respondents. They have filed no county affidavits, nor have they offered any evidence. They have relied entirely upon their contention that legally a stay may not be granted by this court without the giving of a stay bond, at least unless application be first made in the court below.

■ Appellant's motion for an order staying the hearing of the return and account and petition of the receiver for confirmation of sale, and vacating the order setting said hearing, is granted, and it is hereby ordered and adjudged that no further proceedings be had in the lower court, or any further steps taken by said court or the receiver towards the confirmation of said sale, or the conveyance of said property; or any portion thereof, pending the appeal herein. Appellant's motion for an order vacating said sale will be denied at this time, pending the decision of this court on the merits of the appeal.

NOTE—ORR, J., being disqualified, the Governor designated HON. EDGAR EATHER, Judge of the Third Judicial District, to sit in his stead.

## ON THE MERITS

February 1, 1940.                    98 P.(2d) 481.

# OPINION

By the Court, DUCKER, J.:

This action grew out of what was found by the trial court to be a partnership agreement in the ownership and operation of a lease on certain lots in Boulder City, Nevada, stages, automobiles, equipment, machinery, appliances, furniture, and fixtures, together with the buildings on said lots, for a period of five years. On the 25th of October 1935 plaintiff, who was the owner of said properties and business, agreed to sell to the defendants, who agreed to purchase, an undivided one-half interest in same, for the price of $6,000, payable, $300 in cash, and a promissory note for $5,700 due in

five years from date thereof. In addition to this consideration defendants agreed to devote their entire time to said business in the management and conduct thereof.

A written agreement was executed by the plaintiff and defendants on that date. Plaintiff alleged in his complaint that the written agreement, due to mutual mistake, contained only a part of the arrangement entered into, and alleged the particulars in which it failed to state the full understanding of the parties. Plaintiff, becoming dissatisfied with the defendants' management of the business, and contending that the written agreement was incomplete as aforesaid, served upon defendants a notice of rescission of the agreement of sale of the undivided one-half interest in said properties and business, a notice of dissolution of the partnership agreement, demanding an accounting and payment of any sum of money found due plaintiff upon such accounting, offering therein to return in addition to the note, any and all benefits received under and by virtue of the agreement, and to restore the status quo of the parties.

Upon defendants failing to comply therewith this action was instituted in which such relief is sought. Defendants answered; the action was tried to the court; a decision was rendered on March 24, 1939, and counsel for the defendants were directed to prepare findings. Thereafter defendants served upon plaintiff proposed findings of fact and conclusions of law. Prior to the entry of judgment and before findings of fact and conclusions of law were signed, the court premitted plaintiff's counsel to withdraw as his attorneys. Thereafter the present attorney, who represents plaintiff on appeal, appeared specially for him in the court below and made a number of motions, which were all denied by the court. Findings of fact and conclusions of law were signed and filed by the court.

The court found, inter alia, that an agreement of partnership, partly oral and partly written, for the term

of five years from October 25, 1935, had been entered into between the parties and that plaintiff dissolved the same after nineteen months in contravention of the agreement, and found that no damages resulted from such improper dissolution; that in order to adjust the accounts between the parties duly found, and effect an equitable division of the joint property and assets, a sale of such property must be made by the receiver theretofore appointed. Judgment was entered accordingly.

Plaintiff noticed his appeal from the judgment; from the order of the court denying his motion for modification of the judgment; from the order granting defendants' motion for a modification of the judgment; from the order denying plaintiff's motion for a continuance of sale, and from the order denying his motion for a new trial. We will continue to refer to the parties as they appeared in the court below.

Forty-four errors have been assigned. We will discuss only such of these assignments as have been fairly argued.

The first of these is that the court erred in denying plaintiff's motion to vacate the stipulation made by counsel for the parties, agreeing that the accounting reported by the referee was incorrect and that certain specified figures constituted a correct accounting. There is nothing unusual in such a stipulation of fact dispensing with formal proof. On the contrary, it is common practice to dispense with such proof by an agreed statement of facts. Stipulations of this kind, as said in City of Los Angeles v. Oliver, 102 Cal. App. 299, 283 P. 298, 311, "have always been regarded by the courts as establishing the facts stipulated and as taking the place of evidence with regard thereto." Sec. 23 Cal. Jur. p. 816 and cases cited in note 14. The practice is encouraged by the courts. 60 C. J. 58. But counsel for plaintiff asserts that his client's former attorneys did not have authority to enter into the stipulation. In this he

is mistaken. As a general rule an attorney has implied authority to bind his client for the management and conduct of the cause while it is pending before the court for determination. This general rule and the manner in which such authority can be exercised are seen in our statute. Sec. 600 N. C. L. It provides in part: "An attorney and counsellor shall have authority: First— To bind his client in any of the steps of an action or proceeding, by his agreement filed with the clerk, or entered upon the minutes of the court, and not otherwise. * * * "

The stipulation in this case, pursuant to the statute, was filed with the clerk. Stipulations by respective counsel as to evidence to take the place of formal proof have always been common practice.

■ As stated by Mr. Thornton, in his work on Attorneys at Law, vol. 1, pp. 476, 477: "The implied power of an attorney to make admissions of fact on behalf of his client within the scope of his authority in conducting litigation, is beyond question. Admissions when so made by an attorney bind the client and dispense with the necessity of proof." The following authorities support the rule stated: Lewis v. Sumner, 13 Metc., Mass., 269, 272; Garrett v. Hanshue, 53 Ohio St. 482, 42 N. E. 256, 35 L. R. A. 321; Holmes v. State, 82 Neb. 406, 118 N. W. 99; Harrill Bros. v. Southern R. Co., 114 N. C. 542, 57 S. E. 382; Richmond v. Sangster, Tex. Civ. App., 217 S. W. 723; Heinze v. Industrial Commission, 288 Ill. 342, 123 N. E. 598; Christy v. Atchison, T. & S. F. Ry. Co., 8 Cir., 233 F. 255; 5 Am. Jur. 314; 7. C. J. S., Attorney and Client, sec. 100, pp. 919, 920, 921; Weeks on Attorneys at Law, p. 450.

The court in Lewis v. Sumner, supra, emphasized the importance of upholding agreements of this kind. Shaw, C. J., speaking for the court, said: "The importance of upholding agreements and concessions like the present, between attorneys and counsel of litigating parties, is greater than it might seem at first blush, and is

enhanced by our present practice. In most cases of controverted facts, many facts are embraced in the issue, which are not really in dispute between the parties; but each must be prepared to prove all the facts necessary to his own case, unless he can previously obtain a concession from the adverse party, in a form which he can rely upon, at the trial. It is, therefore, a wise, useful and beneficial practice, resorted to by those who are most careful in preparing causes for trial, and a practice well deserving to be encouraged by the courts, for the parties, by their attorneys, to obtain and give mutual concessions, in writing, of all the material facts, not intended to be controverted, and so narrow the litigation to the precise matters in controversy. It saves expense, avoids surprise and delay, and often prevents the loss of a good cause, by an expected call for proof, which could easily have been obtained, if it had been anticipated that such fact would be called in question. This practice of admitting facts is the more necessary, since the disuse of special pleading, which was designed, and to some extent had the effect, to narrow the issue on record to some one or a few questions of fact. This consideration renders it important to hold, that a litigant party shall not be permitted to deny the authority of his attorney of record, whilst he stands as such on the docket. He may revoke his attorney's authority, and give notice of it to the court and to the adverse party; but whilst he so stands, the party must be bound by the acts of the attorney."

In Garrett v. Hanshue, supra, the court, after a review of the authorities held [53 Ohio St. 482, 42 N. E. 260, 35 L. R. A. 321]: "In view of these authorities, we are of opinion, and so hold, that an attorney of record has ample power to do on behalf of his client all acts, in or out of court, necessary or incidental to the prosecution, management, or defense of the action, and which affect only the remedy, and not the right, and that this includes the power to waive objections to evidence, and enter into

stipulations for the admission of facts on the trial."

In the case before us the stipulation did not affect a substantial right. It went only to the mode of proof. Within the meaning of the statute it was but a step taken in the procedure by which the cause of action was litigated. Consequently the authorities cited by appellant to the effect that the rule applies only to procedure need not be discussed. State v. Cal. Min. Co., 15 Nev. 234; Scheeline Banking & Trust Co. v. Stockgrowers' & Ranchers' Bank, 54 Nev. 346, 16 P. (2d) 368, cited by him are not in point. Moore v. De Bernardi, 47 Nev. 33, 213 P. 1041, 220 P. 544, is not contrary to the views expressed.

We have considered the motion to vacate, and affidavit of plaintiff in support thereof, attentively, and are satisfied that the trial court would have abused its discretion if it had granted the motion. There was no showing of mistake, fraud, collusion, accident, surprise, or some ground of like nature. There is no claim that the stipulation was untrue in any respect, or that a result more beneficial to plaintiff would be obtained if an accounting is had. The burden of the claim is that plaintiff's counsel were without authority to enter into the stipulation. We hold to the contrary.

The errors assigned concerning the promissory note are without merit, and received but a passing notice in the opening brief. It is contended that the judgment should be reversed because plaintiff's rights in the note were not adjudicated. At the trial the note for $5,700 was surrendered to the court for such disposition as it might direct. The court found against plaintiff on all points on which he predicated his offer to surrender the note to defendants, namely, that the agreement of partnership be rescinded and that defendants be required to reconvey to plaintiff everything attempted to be conveyed to defendants. The court found that a partnership had been consummated and that the note had been given as a part of the purchase price for an undivided

one-half interest in the business and property conveyed; that the note was taken by plaintiff as payment and not as evidence of indebtedness. The note is still the property of plaintiff but his rights in it have been fully adjudicated.

Error is claimed by plaintiff on account of the action of the court in denying his motion to vacate orders and to strike proposed findings of facts and conclusions. The motion to vacate was made upon the ground that the orders made on March 24, 1938, when the court rendered its decision on the merits and the proposed findings of facts and conclusions of law prepared pursuant thereto, were premature because the court had not rendered its final decision. On the hearing of the motion the deputy clerk identified the minutes of March 24, 1938, to be as follows: "It was by the court ordered that judgment be entered in accordance with the written judgment to be filed herein. Counsel for defendants directed to prepare findings." The deputy clerk also identified the minutes of July 8 to be as follows: "The court set the 16th day of September, 1938, within which to file objections to proposed findings, and to submit also his substituted findings." The deputy clerk also testified that on said March 24 she had taken down in shorthand certain statements of the court and had made a transcript thereof, which transcript was introduced in evidence. The deputy clerk further testified that said transcript contained only a partial statement of what the court said, and that she did not remember what else he had said. Further hearing of said motion was continued to October 5, 1938. In the meantime, on October 3, 1938, the court caused to be entered in the minutes its further order respecting the statement of the court on March 24, 1938, prefacing said further remarks by the following: "On the 24th day of March, 1938, the court rendered an oral decision in the above entitled matter, and a minute entry thereof was thereafter made; that said minute entry is uncertain in its terms and that

it is not the true or correct statement of what occurred.; the court, at this time, upon its own motion ordered that said minute entry in said cause be amended so as to read as follows:"

It is contended that the court altered its decision in a substantial way. We think, however, that the court merely corrected the record so as to make it speak the truth as to what was actually decided. The court had the inherent power to do this and it was its duty to do it. Lindsay v. Lindsay, 52 Nev. 26, 280 P. 95, 67 A. L. R. 824; Smart v. Valencia, 49 Nev. 411, 248 P. 46; Silva v. Second Judicial District Court, 57 Nev. 468, 66 P. (2d) 422; Dwight v. Hazlett, 107 W. Va. 192, 147 S. E. 877, 66 A. L. R. 102, and authorities cited; 14 Cal. Jur. 994.

The court's statement that the minute entry was uncertain in its terms and not the true or correct statement of what occurred, must be taken as true. Moreover, it is corroborated by testimony of the clerk that the said transcript contained only a partial statement of what the court had said and that she did not remember what else he had said. In any event, a trial court in rendering its oral decision is not bound by what the clerk or stenographer has taken down, but may rely on its memory as to what was actually decided. It may, in the exercise of its discretion, refresh its memory in this respect from any source it deems reliable. District court rule XLV has no application in this case. Lindsay v. Lindsay, supra. The power to change a decision or judgment rests, of course, on different principles.

The complaint made of the refusal of the trial judge on the hearing of the motion at the behest of plaintiff to be sworn and testify and to call in another judge to hear the motion, needs no attention. The court subsequently offered to do both, and counsel objected. Certainly that obviated the cause of complaint, if there was any.

A great deal of complaint is made by the plaintiff concerning the action of the trial judge on the further hearing of the motion, in overruling his objections

to the introduction of evidence; in rejecting the affidavits of plaintiff, his attorney and others; in compelling the attorney to be sworn and answer questions by the court as to averments in his affidavit under threats of commitment for contempt. We have read these affidavits. They had no relevancy to the motion to strike the orders and proposed findings of fact and conclusions of law. The court was therefore justified in refusing to permit them to be filed. Furthermore, they contain matters which bear an implication that impugns the motive and good faith of the trial court as to its action on October 3 in correcting the record of its decision. The attorney was an officer of the court and answerable to it for contempt, if such was the fact. Consequently the court was acting within its authority in compelling him to answer questions under oath as to such matters, which, to say the least, were dubious in their import. The trial court was patient and forebearing throughout and eventually gave the attorney the benefit of the doubt. Moreover, the proceedings in this respect had no bearing on the ground of plaintiff's motion. It was properly denied, and plaintiff had no cause for complaint in the rulings of the court in connection therewith. Neither had he any cause for complaint of the ruling of the court denying his motion for additional and substantial findings.

Another assignment discussed is leveled at the order of the court in denying the motion to enjoin Harold M. Morse, one of the defendants' attorneys, from appearing as an attorney for defendants. The motion was made on the ground that said Morse had previously represented the adverse interests of the plaintiff respecting the subject matter of this action. It appears from the hearing of the motion that some time prior to the commencement of the action plaintiff consulted Morse concerning the subject matter of this litigation, leaving with him for his inspection the written agreement and some accounts with the defendants, and paid him $20 in cash for filing fee, if an action was instituted. Later

plaintiff became dissatisfied with Morse's attitude and terminated the employment. Morse returned the $20 to plaintiff and later accepted employment from the defendants to act as one of their attorneys in the action, and did act as such in filing defendants' pleadings, throughout the trial, and on appeal.

Plaintiff's affidavit was admitted in evidence on the hearing on the motion, and Harold M. Morse, Alfreda Noland, one of plaintiff's former attorneys, and plaintiff testified on the hearing. The motion was submitted, the trial court rendered an oral opinion thereon, and made the following finding: "My finding is that he (Morse) acted with consent of plaintiff, which gave him the right to act; that the consent of plaintiff was given through counsel, with the benefit of the knowledge and experience of counsel, and that as far as appears to the court, in the giving of such consent his rights were fully safeguarded. The motion is denied."

This finding has substantial support in the foregoing testimony. We will not here state or summarize it. To do either would prolong this opinion unnecessarily.

It is well settled that an attorney who is a recipient of the confidence of a client concerning a certain matter, is thereafter disqualified from acting for another party adversely interested in the same general matter. Annotations 51 A. L. R. 1307; Wutchumna Water Co. v. Bailey, 216 Cal. 564, 15 P.(2d) 505; 1 Thornton Attorneys at Law; Boyd v. Second Judicial District Court, 51 Nev. 264, 274 P. 7. Most of the authorities presented by plaintiff are in accord with this general rule. The facts of this case, however, take it out of its operation. They show a waiver on the part of plaintiff of the privilege which, under the general rule, is secured to a client whose confidence has been given to an attorney. The privilege so secured may be waived. In re Cowdery, 69 Cal. 32, 10 P. 47, 58 Am. Rep. 545; Weidekind v. Tuolumne County Water Co., 74 Cal. 386, 19 P. 173, 5 Am. St. Rep. 445; Michel v. McKenna, 199 Wis. 6008, 227 N. W. 396; Harvey v. Harvey, 202 Wis.

553, 231 N. W. 580; Hopkins v. National Bank of Norman, 115 Okl. 196, 242 P. 532, 533; 1 Thornton on Attorneys at Law, secs. 179, 182; 7 C. J. S., Attorney and Client, sec. 48, p. 829.

The waiver may be either express or implied. In Harvey v. Harvey, supra, it was deemed waived by conduct. That a waiver could be made was recognized in the case of In re Boone, C. C., 83 F. 944, 952, and in Peirce v. Palmer, 31 R. I. 432, 77 A. 201, 209, Ann. Cas. 1912B, 181, the court quoted approvingly from the former case as follows: "This is the privilege of the client, and not of the attorney, and, unless the client sees fit to waive his privilege, the obligation solemnly rests upon the attorney to keep his lips forever sealed, and to preserve inviolate the confidence reposed in him."

Under the facts of this case there was both an express waiver and an implied waiver. As previously pointed out, the court found on substantial evidence that Morse acted with the consent of plaintiff given through the latter's counsel. This was an express waiver. No objection or protest was ever made by plaintiff at any stage of the proceedings, during the trial or after decision, or at all, until his present attorney filed the motion to enjoin Morse on June 14, 1938, over a year after Morse appeared in the case as one of the attorneys for defendants. This conduct was in itself a waiver. A party ought not to be permitted to remain quiescent over a long period of time looking for a favorable decision, and, if unsuccessful, obtain a reversal upon a mere charge of collusive fraud between his own attorneys and the attorney on the other side, by which the latter was permitted to appear against him in the action. If it be argued that he was in the hands of his attorneys it may be noted that plaintiff, on the motion to enjoin, testified that he mistrusted his former attorneys from the time he had the conversation with them about Morse representing defendants. Whether an attorney has violated his professional duty by changing sides in a particular case, which is the charge here, depends upon the

facts of the particular case. Logan v. Logan, 97 Ind. App. 209, 180 N. E. 32. Consequently, we have less hesitancy in holding a waiver in this case, because the likelihood that plaintiff sustained injury is extremely remote. He does not allege or show it, but stands on the bare legal proposition that he is entitled to a new trial because of Morse's former relations with him. There is nothing in any of the evidence adduced on the hearing to indicate that he was prejudiced. The evidence adduced on the trial is not before us, but the court found that in giving his consent through counsel, his rights were fully safeguarded. The trial court was in a position to know whether he suffered any prejudice on account of his former relation with Morse. The motion was properly denied and there is no merit in any of the objections taken by plaintiff to the rulings of the court on the hearing of the motion.

It is contended by plaintiff that the court erred in denying his motion for leave to file an amended complaint after its decision had been rendered. This was necessarily addressed to the sound discretion of the trial court. As stated in McCausland v. Ralston, 12 Nev. 195, 28 Am. Rep. 781: "This court has always been quite liberal in sustaining the action of the lower courts in allowing or refusing amendments to pleadings * * *."

The furtherance of justice is more nearly accomplished by this policy. It is not seen why in this case there should be any departure from that course. It is not contended that the proposed amendment was to conform to proof, which is often deemed a sufficient reason for amendment. A comparison of the proposed amended complaint with the original reveals that a substantial change in the cause of action was sought. In the original complaint a rescission of the partnership agreement was asked, together with a dissolution of the partnership, while in the proposed amended complaint a reformation of the partnership agreement was sought. A different issue would have thus been injected into the action. It

is obvious that a new trial would have been necessitated without fault upon the part of defendants. Under such circumstances the motion was properly denied. Nevada Mining & Exploration Co. v. Rae, 47 Nev. 173, 218 P. 89, 223 P. 825.

The granting of defendants' motion for a modification of the judgment of which plaintiff complains, was within the sound discretion of the court.

The plaintiff made a motion for modification of the judgment which was denied by the court. In support of this assignment it is asserted that the judgment is void and the order of sale contained therein is likewise void. There is no merit in the claims. The judgment and order are not void. The findings sustain the judgment and order and we must presume that the evidence sustains the findings.

Error is assigned to the action of the court in denying plaintiff's motion for a continuance of the sale of all the properties belonging to the partnership, which was ordered in the judgment. There was no error in this because no sufficient ground for such continuance was made to appear to the court. The question raised by plaintiff as to the court fixing a time for hearing the receiver's petition for an order confirming his account and return of sale of said properties, has become moot because of a stay granted by this court in that matter. Gottwals v. Rencher et al., 60 Nev. 35, 92 P.(2d) 1000.

No error, at least no prejudicial error, among the forty-four assigned, appears. If any, they are of an extremely technical character.

The judgment and orders appealed from are affirmed.

### On Petition for Rehearing

February 27, 1940.

*Per Curiam:*

Rehearing denied.