**UNITED STATES of America,
Plaintiff,**

v.

**SELECT MEAT COMPANY, a Corporation, Whip Foods, Inc., a Corporation, Morris B. Barefield, Steve A. Lillard, III, and Iva Drew, a Feme Sole, Defendants.**

Civ. No. 3499.

United States District Court
W. D. Texas,
San Antonio Division.

Oct. 25, 1967.

As Corrected Nov. 17, 1967.

40

Ernest Morgan, U. S. Dist. Atty., and
Ted Butler, Asst. U. S. Dist. Atty., for
plaintiff.

C. G. House, of House, Mercer, House
& Brock; San Antonio, Tex., for defend-
ants, Select Meat Co., Morris B. Bare-
field, and Iva Drew.

Jess W. Young of Moursund, Ball &
Young, San Antonio, Tex., for defendant,
Whip Foods, Inc.

A. J. Lewis, Jr., of Foster, Lewis,
Langley, Gardner & Hawn, San Antonio,
Tex., for defendant, Steve A. Lillard, III.

### MEMORANDUM

GRAVEN, District Judge.

In this action the plaintiff seeks judg-
ment against the defendant Select Meat
Company for the unpaid balance on a
promissory note, judgments against the
defendants Morris B. Barefield and Steve

A. Lillard, III, for portions of that unpaid balance, and to have declared as void as having been made in fraud of creditors certain conveyances of real property made by Morris B. Barefield to the defendants Whip Foods, Inc., and Iva Drew.

This action was brought by the plaintiff in behalf of the Small Business Administration, an agency and instrumentality of the United States. Jurisdiction is based upon Section 634(b), Title 15 U.S.C.A., and Section 1345, Title 28 U.S. C.A.

For some time prior to January 2, 1964, the defendant Select Meat Company owned and operated a meat packing and processing plant in the City of San Antonio, Texas. The greater part of the plant in which it carried on its operations was located on Lots 1, 2 and 3, Block 3, NCB in that city, owned by it. The defendant Morris B. Barefield owned the majority of its stock and was its President. The defendant Steve A. Lillard, III, was a stockholder and officer of it.

On January 2, 1964, the defendant Select Meat Company secured a loan in the amount of $225,000.00 from the Small Business Administration. That loan was evidenced by a promissory note in the amount of $225,000.00 payable in monthly installments of $2,489.00 commencing three months after date and bearing interest at the rate of 5½ percent per annum. The note contained a provision for the acceleration of its maturity in the event of default as to the monthly payments. To secure the payment of that note, the defendant Select Meat Company executed a mortgage upon Lots 1, 2 and 3 above described and the plant and equipment located thereon. There was also pledged for the payment of the loan certain shares of stock and other items. The defendant Morris B. Barefield, by a written instrument dated January 2, 1964, guaranteed 75 percent of the loan. The defendant Steve A. Lillard, III, by a written instrument dated January 2, 1964, guaranteed 25 percent of the loan.

The defendant Select Meat Company early defaulted in the monthly loan payments. On June 23, 1964, the defendants Morris B. Barefield and Steve A. Lillard, III, were notified in writing by the Small Business Administration that the payment of the note had been accelerated by the defaults in the specified payments and written demand was made upon each of them for payment under their guaranties. At that time the balance due the note was the sum of $191,944.91. Following the default, the Small Business Administration proceeded to realize upon the personal property and other items pledged for the payment of the loan. It also proceeded, by summary foreclosure, to foreclose the plant mortgage securing the loan. On August 4, 1964, the Small Business Administration, by virtue of the foreclosure, acquired title to Lots 1, 2 and 3, Block 3, heretofore described upon which was located the major portion of the meat packing and processing plant and certain equipment used in connection therewith. Its bid for the property foreclosed on was $85,000.00 which was credited on the loan. After crediting that amount the unpaid balance due on the loan was in excess of $100,000.00.

It was heretofore noted that the loan was secured by a mortgage on Lots 1, 2 and 3 of Block 3 and that by foreclosure sale the Small Business Administration acquired title to those Lots and the plant and equipment located thereon. On the north those Lots front on Laredo Street. Immediately to the south of those Lots there is an alley. Across the alley immediately to the south of those Lots are Lots 7, 8 and 9. The plant, when constructed, was extended not only across the alley but also encroached on the upper portion of Lots 7 and 8. Lot 9 had stock pens on it which were used in connection with the plant. Prior to the conveyances here challenged, the title to Lots 7, 8 and 9 was in Morris B. Barefield individually. There was situated on Lots 7 and 8 a separate building which was being used by the defendant Whip Foods, Inc., as a margarine manufacturing plant. Morris B. Barefield was the owner of the major-

ity of the stock of Whip Foods, Inc., and an officer of it.

On September 18, 1964, Morris B. Barefield, by a warranty deed, conveyed Lot 9 to the defendant Iva Drew. She is his mother. That deed was filed for record on September 21, 1964, and recorded in Volume 5236, page 633, of the Deed Records of Bexar County, Texas. On September 30, 1964, Morris B. Barefield, by a warranty deed, conveyed Lots 7 and 8 to the defendant Whip Foods, Inc. That deed was filed for record on September 30, 1964, and recorded in Volume 5239, page 545, of the Deed Records of Bexar County, Texas. Those are the conveyances which the plaintiff seeks to have declared as void as having been made in fraud of creditors. At the time of the conveyances the unpaid balance on the Select Meat Company loan was in excess of $100,000.00, and Morris B. Barefield was a guarantor to the extent of 75 percent of that amount.

On December 15, 1964, the plaintiff filed its original complaint herein. It asked judgment against the defendant Select Meat Company for the unpaid balance of the loan in the amount of $105,042.68 with interest at the rate of 5½ percent from October 5, 1964. It also asked judgment against the defendant Morris B. Barefield for 75 percent of the loan and against the defendant Steve A. Lillard, III, for 25 percent of the loan under their written guaranties. It also asked that the conveyance of Lots 7 and 8 made to the defendant Whip Foods, Inc., be declared void as having been made in fraud of creditors. On December 16, 1964, the summons in the action was served upon the defendants Select Meat Company, Whip Foods, Inc., and Morris B. Barefield. On December 18, 1964, the plaintiff filed an amended complaint. In addition to asking for the relief asked for in its original complaint, it asked that the conveyance of Lot 9 made by Morris B. Barefield to Iva Drew be declared void as having been made in fraud of creditors.

Earlier in the litigation the question was raised whether the guaranties of the defendants Morris B. Barefield and Steve A. Lillard, III, encompassed 75 percent and 25 percent respectively of the original loan or whether those guaranties encompassed only the unpaid balance of the loan. At the commencement of the trial the attorneys for the plaintiff stated of record that it was only asking judgment against the guarantors for their respective shares of the unpaid balance of the loan. The attorney for the defendant Steve A. Lillard, III, then withdrew from participation in the trial.

The defendants Morris B. Barefield and Select Meat Company in their answers pleaded the affirmative defenses of estoppel and compromise. Those defendants refused to make discovery. On motion of the plaintiff those defenses were stricken as to them. The defendants Iva Drew and Whip Foods, Inc., also pleaded those same affirmative defenses. Those defenses on their part remained in the litigation.

The defendant Iva Drew contests the claimed invalidity of the conveyance made to her. The defendant Whip Foods, Inc., contests the claimed invalidity of the conveyance made to it. The defendants Whip Foods, Inc., and Iva Drew contend that the Small Business Administration was not an existing creditor of Morris B. Barefield at the time of the conveyances here challenged.

The affirmative defenses of estoppel and compromise will be first considered. On December 8, 1965, a pretrial conference was held by the judge then handling the case attended by the attorneys for the parties. The record of that conference contained the following:

"The Court suggested that this case be settled as follows:

"That Defendant, Iva Drew, convey to Plaintiff, United States of America, any interest that she might have in the real estate [Lot 9, Block 3] that was previously conveyed to her by Morris B. Barefield. That judgment in the

amount of $105,042.78, plus interest, be taken by the Plaintiff against Select Meat Company. That Whip Foods, Inc., be given clear title to the property [Lots 7 and 8, Block 3] which it claims to be entitled to by virtue of a deed from Morris B. Barefield. That no judgment be rendered against Morris B. Barefield, Steve A. Lillard, III, Whip Foods, Inc., and Iva Drew.

"That the Government convey to Iva Drew the accounts receivable previously conveyed to the Government by Select Meat Company."

Following the pretrial conference negotiations were commenced with the view of working out a settlement along the lines suggested by the pretrial judge. It was explained to the attorneys for the defendants that the United States District Attorney's Office had no authority to make any binding settlement and that any proposed settlement would have to be authorized and approved by the proper officials of the Department of Justice at Washington, D. C. Joseph Dugan was an employee of the Small Business Administration. His title was that of a loan specialist. He took an active part in the settlement negotiations. He had no authority to conclude any settlement.

Subsequent to the Small Business Administration acquiring title to Lots 1, 2 and 3 and the plant and equipment located thereon, is sought to dispose of the same. In attempting to do so it encountered difficulties because part of the plant was located on the alley and on Lots 7 and 8 and the stock pens were located on Lot 9, to none of which it had title. That situation was a matter of prime concern in the negotiations for settlement.

During the negotiations following the pretrial conference, it developed that Iva Drew was unwilling to convey Lot 9 to the Small Business Administration as suggested by the pretrial judge. Instead, as a part of a proposed settlement, she caused to be prepared an unsigned lease dated January ___, 1966, with the name of the lessee blank, leasing Lot 9 for a term of ten years from February 1, 1966, for the total sum of $5,400.00 payable at the rate of $75.00 per month. The lease contained a great number of provisions. As a part of a proposed compromise, Whip Foods, Inc., caused to be prepared an unsigned lease dated January ___, 1966, with the name of the lessee blank, leasing the encroached portion of Lots 7 and 8 for a term of ten years for the total sum of $2,880.00 payable at the rate of $40.00 per month. The lease contained a great number of provisions.

On January 14, 1966, Dugan made a report to the Regional Office of the Small Business Administration. In that report he reported the receipt of several bids for the plant property, the highest of which was an offer by the San Antonio Packing Company in the amount of $47,000.00 which was contingent upon the furnishing of proper ten-year leases of Lots 7, 8 and 9. He recommended that the United States District Attorney be authorized to settle the suit basically in accordance with the suggestions of the pretrial judge or in a manner deemed to be in the best interests of the Government. The Regional Office approved the recommendation and forwarded it to the proper officials of the Small Business Administration at Washington, D. C., for action thereon by them. No action thereon by them forthcame.

On February 16, 1966, the San Antonio Packing Company revised its bid and offered to purchase Lots 1, 2, and 3 "as is, where is" without regard to leases for Lot 9 and the encroached portions of Lots 7 and 8. That second bid was communicated to the Regional Office. On February 21, 1966, the Regional Office wrote the proper officials of the Small Business Administration at Washington, D. C., rescinding its recommendation of the settlement proposed in the January 14, 1966, report of Dugan. The Regional Office recommended that the sale be made as proposed to the San Antonio Packing Company in accordance with its revised bid and that the United States District Attorney proceed with the case. The proper officials of the Department of Justice never approved or

authorized the settlement outlined in Dugan's report of January 14, 1966, or any other settlement with the defendants. Following the revised bid of the San Antonio Packing Company, the sale of Lots 1, 2 and 3 to it for the sum of $47,000.00 "as is, where is" was approved by the proper officials of the Department of Justice upon recommendation of the Small Business Administration, the sale was completed and settlement negotiations with the defendants were discontinued, and the United States District Attorney proceeded with the litigation.

It appears in connection with the revised bid of the San Antonio Packing Company that it ascertained that the City of San Antonio had indicated a willingness to close the alley upon which the plant encroached and that the plant only encroached upon Lots 7 and 8 to the extent of 6.3 feet. The San Antonio Packing Company evidently preferred to go ahead on an "as is, where is" basis rather than to get involved in the proposed leasing arrangements for Lots 7, 8 and 9.

The defendants Iva Drew and Whip Foods, Inc., both pleaded the affirmative defenses of estoppel and compromise. It is their claim that the litigation was compromised and settled along the lines suggested by the pretrial judge. Related thereto is their claim that the actions of the local representatives of the Small Business Administration in connection with the proposed compromise were such as to estop it from asserting that the litigation was not compromised.

■■ The defense of compromise is lacking any evidentiary support. It was at all times known to the parties to the proposed settlement that it could only be made with the approval of and authorization by the proper officials of the Department of Justice at Washington, D. C., which approval and authorization was never had. The defense of estoppel is likewise lacking evidentiary support. No actions on the part of the local representatives of the Small Business Administration were shown which estop the plaintiff from asserting that the litigation had not been compromised and settled even assuming that the Department of Justice could be estopped by the action of the subordinates of the Small Business Administration.

It was heretofore noted that the defendants Whip Foods, Inc., and Iva Drew contend that the Small Business Administration was not an existing creditor at the time of the conveyances here challenged. Their contention in that regard is contained in their exception to a supplemental Pretrial Order and in the brief of the defendant Whip Foods, Inc. In their exception they state that it was impossible for the Small Business Administration to be a creditor of Morris B. Barefield individually prior to the adjudication of the actual debt owed by the Select Meat Company to the Small Business Administration "for the reason that Barefield was a guarantor of the Note and the mere legal effect of being a guarantor does not create the relationship of debtor and creditor in the legal sense of the word, and that relationship, i. e. debtor—creditor between Plaintiff and Morris B. Barefield was not in existence on the date of the conveyance by Morris B. Barefield to Whip Foods, Inc. of the land in question."

In its brief the defendant Whip Foods, Inc., states in this connection that since Morris B. Barefield was a guarantor as distinguished from a surety he was not subject to suit until default and liability of the defendant Select Meat Company has been established. It further states that whether the Small Business Administration was or was not a creditor of Morris B. Barefield would not be established until judgment was entered against the Select Meat Company. The written guaranty of Morris B. Barefield provided that he "unconditionally guarantees to SBA, its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal of and interest on and all other sums payable, or stated to be payable, with respect to the note of the Debtor * * *." The guaranty further provided: "In case the Debtor shall

fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the undersigned, immediately upon the written demand of SBA, will pay to SBA the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the undersigned. * * *."

■ The general rule is that upon default of the maker of a note in the payment thereof a guarantor of it becomes liable to the holder and the relationship of debtor and creditor is at once established between the guarantor and the holder of the note. 38 C.J.S. Guaranty § 66, p. 1227: Page Trust Company v. Wachovia Bank & Trust Company (1924), 188 N.C. 766, 125 S.E. 536, 37 A.L.R. 1368.

In the present case Morris B. Barefield unconditionally guaranteed 75 percent of the loan. He was notified of the default of the maker of the note as to payment and a written demand was made upon him for payment in accord with his guaranty. It would seem clear that when the Select Meat Company defaulted in the payment of the note and Morris B. Barefield was notified of such default and written demand was made upon him for payment in accord with his guaranty that thereupon the Small Business Administration became an existing creditor of Morris B. Barefield. There appears to inhere in the contention of the defendants Whip Foods, Inc., and Iva Drew that in order for the Small Business Administration to attack the conveyances as fraudulent it must not only have been an existing creditor but also a judgment creditor.

Rule 18 of the Federal Rules of Civil Procedure relating to the joinder of claims and remedies provides, in part: " * * * In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money." See, in this connection, Wynne v. Boone (1951), 88 U.S.App.D.C. 363, 191 F.2d 220, 224.

■ It is the holding of the Court that the plaintiff at the time of the conveyances in question was an existing creditor of Morris B. Barefield and may maintain this action to set aside those conveyances without first having obtained judgment against the Select Meat Company or Morris B. Barefield.

It is the contention of the plaintiff that the defendants Whip Foods, Inc., and Iva Drew did not by their pleadings or otherwise properly raise the questions just considered. In view of the fact that the Court finds the contentions of the defendants Whip Foods, Inc., and Iva Drew in this connection are not well founded, it is not necessary to pass upon that contention of the plaintiff.

It was heretofore noted that the plaintiff asks that the conveyances of Lots 7 and 8 made by Morris B. Barefield to the defendant Whip Foods, Inc., and the conveyance of Lot 9 made by Morris B. Barefield to Iva Drew be declared void as having been made in fraud of creditors. The plaintiff relies upon two statutes, Articles 3996 and 3997, Vernon's Texas Civil Statutes. Article 3996 is as follows:

"Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, every suit commenced, or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This article shall not affect the title of a purchaser, for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor. Acts 1840, p. 28; P.D. 3876; Acts 1927, 40th Leg., p. 42, ch. 30, § 1."

Article 3997 is as follows:

"Every gift, conveyance, assignment, transfer or charge made by a debtor, which is not upon consideration deemed valuable in law, shall be void as to prior creditors, unless it appears that such debtor was then possessed of property within this State subject to execution sufficient to pay his existing debts; but such gift, conveyance, assignment, transfer or charge shall not on that account merely be void as to subsequent creditors, and though it be decreed to be void as to a prior creditor, because voluntary, it shall not for that cause be void as to subsequent creditors or purchasers. Acts 1840, p. 28; P.D. 3876–77."

The matter of the conveyance of Lots 7 and 8 to the defendant Whip Foods, Inc., will be first considered. It was heretofore noted that in addition to that part of the Select Meat Company plant which encroached on Lots 7 and 8 there was also located thereon a separate building. On August 8, 1963, Morris B. Barefield entered into a lease with the defendant Whip Foods, Inc., leasing Lots 7 and 8 to it for a period of ten years from September 1, 1963, at $200.00 per month. It was recited in the lease that the leased premises were to be used by the defendant Whip Foods, Inc., for the manufacture of oleomargarine. The lease was signed by Morris B. Barefield and his wife as lessors and by Whip Foods, Inc., as lessee. The lessee's signature was as follows: "Whip Foods, Inc., by Morris B. Barefield, President."

On August 9, 1963, Morris B. Barefield procured a loan from the Farm and Home Savings Association[1] in the amount of $25,000.00. The principal and interest on the loan was payable $200.00 monthly. That loan was secured by a mortgage on Lots 7 and 8. Morris B. Barefield assigned the lease to the Farm and Home Savings Association as security for the loan.

The voting capital stock of the defendant Whip Foods, Inc., consisted of 360 shares of common stock. On January 2, 1964, at the time the defendant Select Meat Company secured the loan of $225,000.00 from the Small Business Administration, Morris B. Barefield was the owner of 240 shares of Whip Foods, Inc., and was its President. He pledged his stock for the payment of the Select Meat Company loan. In August, 1964, by foreclosure of its pledge of that stock, the Small Business Administration became the owner thereof. On September 21, 1964, it sold those shares to Ray S. Edmunds for the sum of $2,000.00. At a time not shown he succeeded Morris B. Barefield as President of Whip Foods, Inc., and continued as its President until October, 1966, when he became its Vice President.

On September 30, 1964, Morris B. Barefield, as heretofore noted, conveyed Lots 7 and 8 to the defendant Whip Foods, Inc. The deed contained the following provision: "This conveyance is made subject to a first lien on said property in favor of Farm and Home Savings and Loan." The matter as to what consideration there was, if any, for the conveyance will be next considered.

On September 14, 1965, in response to interrogatories propounded to Whip Foods, Inc., answers thereto sworn to by Ray S. Edmunds as President were made. Certain of those interrogatories and the answers thereto are next set forth:

"1.   Is it true that on or about September 3, 1964, Morris B. Barefield conveyed to Whip Foods, Inc. Lots 7 and 8, in Block 3 of New City Block 2812, of the City of San Antonio, Texas?

ANSWER: No. The conveyance was made on September 30, 1964.

2.   If so, what consideration was paid to Morris B. Barefield for having made such conveyance?

ANSWER: None.

3.   Was such consideration paid in cash?

ANSWER: See answer to No. 2.

1. Its correct name. It is also referred to as Farm and Home Savings and Loan, Farm and Home Loan Association, and Farm Home and Loan Association.

4. Was such consideration paid for cancellation of a note or other debt, and if so, explain in detail and attach a copy of the note or evidence of the indebtedness?

ANSWER: There was no consideration paid to Morris B. Barefield, but Whip Foods, Inc. assumed the obligation on said property to Farm & Home Savings & Loan in June, 1964.

\* \* \* \* \* \*

10. Does Whip Foods, Inc. owe Morris B. Barefield any money, and if so, how much?

ANSWER: $180.04.

11. Does Morris B. Barefield owe Whip Foods, Inc. any money, and if so, how much?

ANSWER: No."

Ray S. Edmunds was a witness at the trial. In connection with the situation at the time of the transfer of Lots 7 and 8 by Morris B. Barefield, sometimes referred to as Red Barefield, he testified, in part, as follows:

"Q Red Barefield didn't owe Whip Foods any money?

A No, sir.

Q So, it wasn't—the transfer wasn't for cancellation for a debt or anything like that?

A No. There was no debt. He did not owe the company money."

It clearly appears that Whip Foods, Inc., did not pay Morris B. Barefield any money or transfer any property to him in consideration of the transfer. It appears that Whip Foods, Inc., made the monthly payments to the Farm and Home Loan Association on its mortgage loan. It is the contention of Whip Foods, Inc., that as consideration for the transfer it assumed payment of that mortgage loan. It was heretofore noted that the deed of transfer recited that it was being subject to that loan. No words of assumption appear in it. There is absent any satisfactory evidentiary showing that Whip Foods, Inc., ever assumed payment of that loan.

Some courts have held that under certain circumstances the assumption of a mortgage on property allegedly conveyed in fraud of creditors may constitute proper consideration for the conveyance. See cases cited in Annotation 6 A.L.R.2d 270. In all of the cases there cited the grantee had, in fact, assumed liability for the payment of the mortgage. That is not the situation in the present case. Where property is conveyed subject to the mortgage, valuable consideration for the conveyance is lacking. Feist v. Druckerman (2d Cir. 1934), 70 F.2d 333, 334. Further, the case of Evans v. First National Bank of Mt. Vernon (Tex.Civ.App.1933), 65 S.W.2d 366, is of interest. That case had to do with an action brought by a creditor to enforce a judgment lien against land transferred by a debtor. The transferees assumed an encumbrance on the property transferred, which encumbrance was less than the value of the property. The Court held that the assumption did not constitute valuable consideration as against the transferor's creditors.

The plaintiff and Whip Foods, Inc., are in controversy as to whether at the time of the conveyance Lots 7 and 8 had a value in excess of the mortgage loan thereon. During the course of the liquidation of the Select Meat Company loan, the Small Business Administration caused an appraisement to be made of Lots 7 and 8. That appraisement was made in January, 1965. The land and buildings were appraised as having a fair market value of $32,000.00. The fact that during the year prior to the conveyance the Farm Home and Loan Association made a mortgage loan of $25,000.00 on the property would be indicative of the fact that the property had a value in excess of that amount. At the time of the conveyance to Whip Foods, Inc., the principal of the mortgage loan had been reduced to approximately $23,000.00. While the property at the time of the conveyance may not have had the value claimed

by the plaintiff, it seems clear that at the time of the conveyance the property had a value substantially in excess of the mortgage loan against it.

The situation at the time of the conveyance as established by the evidence will be next referred to. Morris B. Barefield was indebted to the Small Business Administration on his guaranty in excess of $75,000.00 which was owing and unpaid. He made a voluntary conveyance of Lots 7 and 8 to Whip Foods, Inc., without receiving any valuable consideration therefor. The conveyance to Whip Foods, Inc., having been made without valuable consideration under Article 3997 heretofore set out, the burden was upon Whip Foods, Inc., to establish that at the time of the conveyance Morris B. Barefield had sufficient property subject to execution in Texas to pay his existing debts. Duncan v. Jones (Tex.Civ.App. 1941), 153 S.W.2d 214 (n. w. h.); Evans v. First National Bank of Mt. Vernon (Tex.Civ.App.1933), 65 S.W.2d 366 (n. w. h.). Whip Foods, Inc., did not so establish.

▪ It is the finding and the holding of the Court that the conveyance of Lots 7 and 8 made by Morris B. Barefield to Whip Foods, Inc., is void under the provisions of Article 3997.

In its Third Amended Answer the defendant Whip Foods, Inc., asked for certain affirmative relief in the event that the conveyance to it of Lots 7 and 8 be set aside. It asked that it be reinstated to its rights as lessee under the lease made by Morris B. Barefield to it on August 8, 1963, whereby it leased from him those lots for a term of ten years with a rental of $200.00 per month. In Paragraphs XV, XVI, and XVII of that Amended Answer it pleaded as follows:

## "XV.

Pleading further in the alternative, this Defendant says that if Plaintiff makes any recorery [sic] herein this Defendant is entitled to credit for and judgment against Plaintiff for all payments that it has made on a certain lien and note payable to Farm and Home Savings Association on the described property said payments having been made in the amount of $277.-57 per month since said property was conveyed to this Defendant. In the further alternative Defendant says that it has become equitably subrogated to the rights of said Savings Association and should recover an undivided interest in said property proportionate to its payments for which it asks judgment.

## XVI.

Pleading further in the alternative, this Defendant says that it has, in addition to the note payments recited in paragraph XV above, made certain other payments in improving said property, and in preserving same for the creditors, should the deed conveying the property to this Defendant be set aside, and in equity this Defendant is entitled to recover, in addition to the mortgage payments and interest made, recited in paragraph XV above, the following enumerated amounts:

A. Taxes paid to the County Tax Assessor-Collector of Bexar County, Texas $216.89

B. Taxes paid to the City of San Antonio, Texas $536.24

C. Insurance insuring the improvements on Lots 7 and 8, Block 3, New City Block 2812, paid to Floyd West Company in the amount of $364.70.

That all of these payments were required to be made, under and virtue of the existing first lien mortgage held by Farm and Home Savings Association, and should the same have not been made, the first lien holder would have foreclosed on whatever equity, if any, there was, and further that the taxing authorities would have been able to charge penalty interest and would have been able to foreclose their tax lien to the detriment of the unsecured creditors.

## XVII.

Pleading in the alternative this Defendant also asks that in equity it re-

cover the sums of money paid to improve the property, which increases the value of said property. Said improvements were permanent, and cannot be removed from said property and were in the amount of $697.00."

The matter of the relief asked for by Whip Foods, Inc., as to the lease will be first considered. It was heretofore noted that that lease prior to the commencement of this action had been assigned by Morris B. Barefield to the Farm and Home Loan Association as security for the mortgage loan upon the lots in question. That Association was not made a party to this action. Because of that situation, the Court is of the view and holds that it is lacking in jurisdiction to make any adjudication as to the status of that lease.

The affirmative relief asked by Whip Foods, Inc., as to the disbursements made by it involves a number of matters. The question as to what affirmative relief may be granted to a grantee of real property where the conveyance is held to have been void as to creditors has been considered by many courts. See Annotations in 8 A.L.R. 527, 79 A.L.R. 132, 128 A.L.R. 1504, and 60 A.L.R.2d 593, 618.

Where a conveyance of real property is held to be void because of having been made in fraud of creditors, the situation frequently is that the grantee between the time of the conveyance and the setting aside of it has been in possession of the real estate and has made disbursements for principal and interest payments on liens which were on the property at the time of the conveyance and for taxes, insurance and improvements. Frequently the question arises as to the accountability of such grantee for rents and profits of the property or the reasonable rental value thereof. In the present case the specified rent in the lease in existence at the time of the conveyance provided for a rental of $200.00 per month. Nothing further appears as to rentals and profits of the lots during the period of time in question.

In some of the cases where a conveyance has been set aside as having been made in fraud of creditors, the creditor who was successful in setting aside the conveyance also sought an accounting by the grantee of the rentals and profits of the property during the period such grantee was in possession of it or sought to hold the grantee accountable for the reasonable rental value of the property during that period. Where such an accounting is asked for by the creditor the grantee usually asks for credit for disbursements made for mortgage payments, for mortgage interest payments, taxes, insurance and improvements.

In the present case the plaintiff did not ask for an accounting by Whip Foods, Inc., as to profits or for reasonable rental. Whip Foods, Inc., in the event the conveyance is held to be void, asks for affirmative relief as to the mortgage loan and interest payments, taxes, insurance and improvements. It asks such relief for the total amount of those payments without reference to the matter of the reasonable rental value of the property or its profits therefrom since it has been in possession of it. It is apparent that the disbursements made by Whip Foods, Inc., for the items referred to were in excess of the $200.00 per month specified in the lease of the lots heretofore referred to.

It appears from the cases either cited or discussed in the annotations heretofore cited that the Courts are not in agreement as to the matter of granting affirmative relief to a grantee in a conveyance found to have been made in fraud of creditors as to disbursements made to such grantee for mortgage payments, mortgage interest payments, taxes, insurance and improvements while in possession of the property. In 8 A.L.R. 529 the annotator states:

"As to whether a grantee who is guilty of actual fraud is entitled to reimbursement for taxes and prior encumbrances on the property, discharged by him, the authorities are conflicting. The majority of the cases pass-

ing on the question hold that a grantee who is clearly shown to be guilty of actual fraud is not entitled, as against creditors of the grantor, on the setting aside of the conveyance, to reimbursement for sums paid by him to discharge taxes and prior encumbrances on the property, and cannot be subrogated to the rights of the holders of such prior liens."

Among the cases cited in support of the majority rule is the case of Cooper v. Friedman (1900), 23 Tex.Civ.App. 585, 57 S.W. 581. In that case creditors of one Zapadinsky brought an action to set aside the transfer of certain lands to one Friedman on the ground that they had been made in fraud of creditors. The Court stated (p. 582, 57 S.W.):

"The sixth and seventh assignments of error are well taken. If Friedman fraudulently purchased the property, he could not recover from the appellants, or make as a charge on the property the taxes and insurance and interest on the mortgage debt on the property paid out by him. Such purchase would be as to the appellants, creditors of Zapadinsky, under the statute, void; and Friedman, in his relation to the appellants, would occupy the position of a stranger."

Where a conveyance of real property is held to be invalid because of its having been made in fraud of creditors and the grantee seeks affirmative relief as to disbursements made in connection with the property, the knowledge of the grantee as to the nature and character of the conveyance is of importance. Where the grantee is a corporation, the knowledge of its officers as to the nature and character of the conveyance is the knowledge of the corporation.

■ In the present case the only persons who had to do with the conveyance in question were Morris B. Barefield and Ray S. Edmunds. In 1963 Morris B. Barefield was President of Whip Foods, Inc. Sometime later he was succeeded as President by Ray S. Edmunds who continued as President until October, 1964, when he became Vice President.

Ray S. Edmunds testified that at the time of the conveyance Morris B. Barefield was Vice President of Whip Foods, Inc. Whip Foods, Inc., through its officers was chargeable with its knowledge of the nature and character of the conveyance. Whip Foods, Inc., was chargeable with knowledge that no valuable consideration was being paid to the grantor for the conveyance of Lots 7 and 8. It was also chargeable with knowledge that at the time of the conveyance Morris B. Barefield was indebted to the Small Business Administration on his guaranty for 75 percent of the unpaid balance of the $225,000.00 loan and that the Small Business Administration was foreclosing on its security and seeking collection of that unpaid balance. In accepting a voluntary conveyance of the lots under the conditions and circumstances, Whip Foods, Inc., joined in the attempt of Morris B. Barefield to complete a donation of the property for the purpose of placing it beyond the reach of his creditors. Therefore, Whip Foods, Inc., under the majority rule followed by Texas, may not have affirmative relief as to the disbursements in question made by it.

■ In the present case there is another feature that is of importance. On December 16, 1964, Whip Foods, Inc., was served with a summons in this action in which the conveyance in question was challenged by the Small Business Administration as a creditor of Morris B. Barefield. It seems that while some Courts will grant affirmative relief to a grantee of a conveyance made in fraud of creditors prior to the commencement of an action by a creditor to set it aside, yet the general rule appears to be that after an action has been commenced by a creditor to set aside a conveyance as having been made in fraud of creditors the grantee makes disbursements in connection with the property at his peril. See Angers v. Sabatinelli (1940), 235 Wis. 422, 293 N.W. 173, 128 A.L.R. 1491.

In the present case Whip Foods, Inc., commenced making monthly payments to the Farm Home and Loan Association in June, 1964. The conveyance, as hereto-

fore noted, was made on September 30, 1964. It is indicated that the payments preceding the conveyance were made under some arrangements with Morris B. Barefield for Ray S. Edmunds testified that Whip Foods, Inc., did not owe Morris B. Barefield any money at the time of the conveyance. The only payments made by Whip Foods, Inc., in connection with the property between the time of the conveyance and the time it was served with summons were the monthly payments to the Farm Home and Loan Association for the months of October, November and December, 1964.

There is next to be considered the conveyance of Lot 9 by Morris B. Barefield to the defendant Iva Drew on September 18, 1964. On that lot there were cattle pens which were used in connection with the Select Meat Company plant. It was heretofore noted that Iva Drew is the mother of Morris B. Barefield. In 1947 she divorced her husband who was the father of Morris B. Barefield. She subsequently married one Drew. It appears that for a period of time she was engaged in the grocery and cafe business with an uncle or aunt, or both. On July 2, 1951, she executed a check to M. B. Barefield in the amount of $5,000.00. On April 15, 1959, she executed a check to M. B. Barefield in the amount of $7,000.00. M. B. Barefield is the same person as Morris B. Barefield. There seems to be no question but that Morris B. Barefield received the proceeds of those checks. It appears that at the time of the execution of the checks Morris B. Barefield was in the meat business and told her he needed money. No note or other evidence of indebtedness was executed by Morris B. Barefield for the $12,000.00. It seems clear that Morris B. Barefield became indebted to Iva Drew for the proceeds of the checks. Subsequently on her request he paid her $500.00 of that indebtedness.

In regard to the conveyance of Lot 9, Iva Drew, in a deposition, testified as follows:

"Q  Several days before this conveyance, did you and Mr. Barefield have a discussion?

A  Yes, we did.

Q  And what was the nature of that discussion?

A  Well, he called and told me that he was in bad financial shape and broke, and he was going to convey this lot to me to protect my loan, the debt.

Q  And what did you tell him?

A  I told him it was all right. That was the only thing we could do, and naturally I wanted to be protected.

Q  Yes, ma'am.

A  Because that was all the money I had, and I naturally wanted to be protected."

In the same deposition she further testified, in part, as follows:

"Q  What about the money that he borrowed from you? Does he still owe you the money?

A  You mean the advancement I made?

Q  Yes, ma'am.

A  Yes.
MR. HOUSE: Listen to his question, now, Mrs. Drew.

*       *       *       *       *       *

'Q  What about the money that he borrowed from you? Does he still owe you the money?'

A  Well, he owes me the money, but the lot was to cover the indebtedness of that. Is that what you mean?

Q  In other words, the lot was to stand good for the money that he—

A  Yes, that is the reason he conveyed it to me.

Q  To stand good as kind of a mortgage?

A  Well, I don't know whether I understand you correctly or not.

When he conveyed that property to me, it protected the debt.

\* \* \* \* \* \*

Q Mrs. Drew, when your son conveyed that lot to you, did you cancel the indebtedness which he owed you?

A No, I did not. Am I understanding you correct, Mr. House, that he conveyed that to me; he didn't have they [*sic*] money, but the lot was conveyed to me for the debt that he owed me.

Q That is what I asked you, did he convey that lot to you?

A Yes.

Q For the debt that he owed you?

A Yes."

The situation as established by the evidence is that at the time of the conveyance of Lot 9 Morris B. Barefield was justly' indebted to the defendant Iva Drew in the principal sum of $11,500.00; that he and she both knew that he was in distressed financial circumstances; that he made the conveyance of Lot 9 to give her security for the payment of his indebtedness to her. In other words, the deed constituted a mortgage securing the payment of the indebtedness. A deed absolute on its face but intended only for security will be upheld as a mortgage. 24 Am.Jur., Sec. 95, page 247.

Lot 9 was free of encumbrance at the time of the conveyance. The evidence is that the lot had and has a market value of around $6,500.00. The deed stands as a mortgage for the security for the payment of $11,500.00. It is established that Morris B. Barefield, in failing financial circumstances, gave Iva Drew security for the payment of his bona fide indebtedness to her in order to protect her. The property constituting the security had a value substantially less than the indebtedness secured. So far as the evidence discloses, her only part in the transaction consisted in accepting security for the payment of a bona fide indebtedness owing to her.

■ It is the well-settled Texas law that a creditor may receive payment of an honest debt by property of his debtor or accept security on property of his debtor for the payment of such debt even though he may know at the time that the debtor's intent in making the payment or giving the security is to place the property beyond the reach of his other creditors, provided that no more property is taken than is reasonably necessary to pay his debt or no more security is taken than is reasonably necessary to secure the payment of the debt. See numerous cases abstracted in the Annotations to Articles 3996 and 3997. In such a situation the transaction amounts to the debtor preferring one of his creditors over his other creditors. Such a preference does not come within the prohibition of either Article 3996 or Article 3997.

■ It is the finding and the holding of the Court that under the deed in question the defendant Iva Drew has a valid lien against Lot 9 as security for the payment to her of the principal sum of $11,500.00.

In this case the plaintiff asked judgment against the defendant Select Meat Company for the unpaid balance of its note and against the defendant Morris B. Barefield for 75 percent of that unpaid balance and against Steve A. Lillard, III, for 25 percent of that balance. It also asked "for judgment declaring to be void the conveyance from Morris B. Barefield to Whip Foods, Inc., \* \* \* and ordering said property seized and sold to satisfy any judgment rendered in favor of plaintiff. \* \* \* " In 24 Am.Jur., Sec. 110, pages 261–262, it is stated:

"\* \* \* The statement that a fraudulent transfer is void as to creditors simply means that the rights of creditors are not affected by the transfer, that creditors may, notwithstanding the transfer, avail themselves of all remedies for collecting their debts out of the property or its avails, and that in pursuing those remedies they may treat the property as though the transfer had not been made—that is, as the property of the debtor. \* \* \* "

A certified statement of account introduced by the plaintiff as an exhibit herein shows that on March 22, 1967, the amount due and owing on the loan of the Select Meat Company was $118,732.45 bearing interest at the rate of 5½ percent per annum. The Court finds that the said amount is justly due and owing on the said loan.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter of this action and the parties thereto.

2. The defendant Select Meat Company is justly indebted to the plaintiff on the note declared on for the sum of $118,732.45 with interest thereon at the rate of 5½ percent per annum from March 22, 1967.

3. The defendant Morris B. Barefield is justly indebted to the plaintiff on the note and guaranty declared on for 75 percent of said unpaid balance, or the sum of $89,049.33, with interest thereon at the rate of 5½ percent per annum from March 22, 1967.

4. The defendant Steve A. Lillard, III, is justly indebted to the plaintiff on the note and guaranty declared on for 25 percent of said unpaid balance, or the sum of $29,683.11, with interest thereon at the rate of 5½ percent per annum from March 22, 1967.

5. The conveyance of Lots Seven (7) and Eight (8), Block Three (3), New City Block Two Thousand Eight Hundred Twelve (2812), City of San Antonio, Bexar County, Texas, made by Morris Barefield to Whip Foods, Inc., by a warranty deed dated September 30, 1964, and recorded on September 30, 1964, in Volume 5239, page 545, Deed Records of Bexar County, Texas, is void as to the plaintiff.

6. The warranty deed to Lot Nine (9), Block Three (3), Two Thousand Eight Hundred Twelve (2812), City of San Antonio, Bexar County, Texas, made by Morris B. Barefield to Iva Drew dated September 18, 1964, and recorded in Volume 5236, page 633, Deed Records of Bexar County, Texas, constitutes valid security for the payment of the principal sum of Eleven Thousand Five Hundred Dollars ($11,500.00) owing by Morris B. Barefield to Iva Drew.

7. The plaintiff is entitled to have a lien declared in its favor against Lots 7 and 8 heretofore referred to for the amount of the indebtedness owing to it by Morris B. Barefield, which lien shall be subject only to the present unpaid balance of the mortgage loan on said Lots to the Farm and Home Savings Association and the present unpaid taxes thereon.

## ORDER FOR JUDGMENT

1. It is hereby ordered that judgment be entered in favor of the plaintiff on the note declared on against the defendant Select Meat Company in the sum of $118,732.45 with interest thereon at the rate of 5½ percent per annum from March 22, 1967.

2. It is further ordered that judgment be entered in favor of the plaintiff and against the defendant Morris B. Barefield on the note and guaranty declared on in the sum of $89,049.33 with interest thereon at the rate of 5½ percent per annum from March 22, 1967.

3. It is further ordered that judgment be entered declaring the said judgment to be a lien against Lots 7 and 8 above referred to subject only to the present unpaid balance of the mortgage loan to the Farm and Home Savings Association and the present unpaid taxes thereon.

4. It is further ordered that judgment be entered in favor of the plaintiff on the note and guaranty declared on against Steve A. Lillard, III, in the sum of $29,683.11 with interest thereon at the rate of 5½ percent per annum from March 22, 1967.

5. It is further ordered that judgment be entered dismissing with prejudice the complaint of the plaintiff as to the defendant Iva Drew.

6. It is further ordered that judgment be entered assessing the taxable costs of

**54**

this action against the defendants Select Meat Company and Morris B. Barefield.

It is further ordered that the foregoing shall constitute the Findings of Fact, Conclusions of Law and Order for Judgment herein.